Judge Mlüls
delivered the Opinion of the Court.
On the 22nd day of December, 18Í3, Edmund Calloway sold to James Ritchie, some houses and lots in the town of Winchester, at the price of ten thousand dollars, payable in different instalments, which were secured by simple promissory notes, and Calloway conveyed the estate to Ritchie, by a deed of indenture in Usual form, acknowledging the receipt of the consideration. One of these notes, for $2000, made payable the 5th of January, 1818, was, on the 14th of May, 1818, after it had become due and part of it had been paid by Ritchie to Calloway, assigned by him to Achilles Eubank, who brought an action at law against Ritchie, and obtained a judgment thereon, in the month of October, 1818.
Ritchie’s bill against Calloway and Eubank,
Mortgage of the property by Ritchie to Poston.
K.otico.
Poston’s bill and decree forocloring his mortgage
Eubank’s bill do subject the property to the payment of the purchase money
Defence of Poston and the purohasers under his sale.
*286 To prevent the collection of this judgment, Ritchie filed his bill with injunction, making Eu-bank and Calloway both defendants. That injunction was dissolved, and afterwards, on the 29th of May, 1820, Eubank issued his execution against Ritchie, returnable to the next succeeding July rule day, and it was returned by the sheriff, “no property found,” and no further effort seems to have hcen afterwards made to recover the debt at law.
Before the dissolution of that injunction, to-wit: on the 8th of March, 1820, Ritchie mortgaged the same houses and lots to William Poston, to secure some demand duo to said Poston, and indemnify him against some responsibilities which he had undertaken for Ritchie, and some time thereafter Ritchie died insolvent.
But when Poston took this mortgage, he was fully apprized that this balance was due for the purchase money, to Calloway or to Eubank his assignee, and that a lien was claimed on account thereof.
After the death of Ritchie, Poston filed his bill against the representatives of Ritchie, to foreclose his mortgage, and obtained a decree for the sale of the estate, which was executed by a commissioner..
Eubank also filed this bill asserting bis lien against the same estate, for the purchase money, due to him as assignee of Calloway, and the more effectually to make known his lien, caused the process to be executed on Poston, at the day of the commissioners’ sale, and also personally attended, and made known to the bidders his demand against the estate. The commissioner then proceeded with the sale, proclaiming it to be made subject to the lien of Eubank, if any he had. Poston, James B. Duncan and Joseph Decreet became the purchasers, each of separate parcels, having previously agreed with each other to pay up their proportionate shares of the lien of Eubank, if it should be successful.
Neither of these purchasers, (they all being parties to this suit,) deny full knowledge of the equity of Eubank, before they respectively acquired an interest in the estate. But they insist that Eubank *287 has no lien, or if he has, that it is only to the real value of notes on the bank of Kentucky, which would nominally be equal to the amount of his debt, at the time of the sale by the commissioner in 1822; because the only execution which had been issued on his judgment in the year 1820, was endorsed that notes on the bank of Kentucky would be taken according to tlic act of Assembly tlien in force.
Decree of the circuit court.
Vendor has a lien on the land, for the consideration money.
Conveyance of the land by deed, acknowledging the receipt of the consideration money, does not prevent the enforcement of the vendor’s lien against a subsequent purchaser, who has not completed his purchase by payment of tho price and acceptance of the title.
Assignee has the benefit of assignor’s lien.
The court below decreed that Eubank had a lien on the estate, and enforced it accordingly; but scaled his demand to the value of notes on the bank of Kentucky at the day of the commissioners’ sale, and allowed him no lien beyond that value. To reverse this decree Eubank has prosecuted this writ of error.
We deem it wholly unnecessary at this day to attempt to prove by authority, the general principle that the vendor of land retains a lieu for the purchase money, and we cannot perceive that this case forms an exception to the general rule. The only evidence of the demand taken by Calloway from Ritchie was simple promissory notes.
It is true that Calloway, in his deed executed to Ritchie', acknowledged in full, the receipt of the consideration. Rut it is at this day clearly settled that the lien exists notwithstanding such acknowledgments, and that it will be enforced, even against a subsequent purchaser, who has not completed his purchase, by a payment of the purchase money and acceptance of his conveyance. To unsettle this rule now, so long understood and matured by legal adjudications, would be to unhinge many contracts, and shake the titles of estates, and ought only to be done prospectively, by legislative authority.
If Calloway had or retained such a lien, it was, by the assignment of the note for the purchase money, transferred to Eubank, as held by this court in the cases of Johnston vs. Gwathmey &c. 4 Litt. Rep. 317; Kenney vs. Collins, Ibid, 289.
On a review of the cases, we still approve of the principles there recognized, and it may therefore also be considered as settled, that the assignee of a note executed for the price of land sold, takes with *288 him all the lien which his assignor had upon the land, and can enforce the same in a court of equity. If this is permissible in any case, it is certainly to be allowed in this, when Calloway is a defendant and claims the lien, and prays the benefit of it to go to Eubank.
-Endorsement of an execution that bank notes ■would be received in payment, which was afterwards returned no estate found, did not bind the plaintiff to continue that endorsement on a subsequent execution.
The only question then is, the extent of that lien. The court below has said that it extends not to the amount of his judgment against Ritchie, but to the same amount in notes of the Bank of Kentucky, scaled to their real value in specie, on the day the sale was made under Poston’s decree in 1822, more than eight years after the debt was contracted. If Ritchie, in 1820, when this execution was in the hands of the officer, had paid this debt, or had replevied it for the space of three months only, and then have paid it, it is admitted that he might have discharged it in notes on the Bank of Kentucky. But had he done so, it is apparent from the proof in the cause that the notes théri were as good as specie, dollar for dollar, or nearly so, Ritchie did not do this, and to say that Eubank, by making this one unsuccessful experiment, by this endorsed execution, has made his judgment, or his contract liable to moulder away, even to nothing, in all time to come, if the notes he was then willing to take, should ever thereafter become worthless, would be giving this act allowing endorsements, a construction more fatal to contracts than has ever yet been done, or than justice, or equity, or the words of the act will allow. It is here worthy of remark, that this contract was made befpi-e any system of endorsement of executions was ever invented in this State, and this endorsement was made under an act of Assembly temporary in its provisions, and not under our late general system of endorsements. The legislature had imposed it for. a limited (jme, thus promising the community that it was a temporary expedient which would be shortly removed; during its continuance, it operated as a species of duress upon Eubank; which he did not think proper to resist, lest his debt should be detained by a longer replevin. If bis adversary had embraced the offer, Eu-bank would have been bound by it ; but as he did *289 not, it ought not to he held as having a greater effect upon the interest of Eubank, than its plain import would impose; which import is plainly this: “Pay me now, or at the end of three months hence, and I will take Bank paper.” If the debt had been replevied and a new execution had issued on the replevin bond, the clerk was directed to continue the endorsement. But as the execution was not replevied, and was returned ineffectual, no act of assembly, either before or since, that we have seen, required every, or any subsequent execution to be endorsed, that Bank paper would be taken.' The plaintiff was certainly at liberty to continue or discontinue his endorsement on any subsequent execution on his judgment.
Where the plaintiff ivho had endorsed his execution that bank notes would, be received, which is replevied, afterwards resorts to another remedy by suit, he is not bound by his endorsement to receive the bank notes.
If, therefore, the decree of the court below had giyen him the value of the paper while his offer to take it was in force, there would have been more apparent equity in the decree; but to revive this offer, long since out of date, and give it effect at an hour of low depreciation, cannot be supported by any principle of equity. We have said that Eu-bank was not compelled to continue this endorsement on subsequent executions; much less could he be compelled to take it along with him when he. resorted to other remedies to recover bis demand. If he had brought an action of debt upon his judgment, or issued a scire facias against Rithie’s representatives, would he have been still compelled to endorse? Certainly not, even under the letter or spirit of the act. If, instead of these remedies, by bill in chancery, he attempts to enforce his lien, can it he right to subject him to the effect of his foriher endorsement? We conceive not. In a case where an execution endorsed has been replevied, and the plaintiff does not chose to issue an execution on the bond, but elects some other remedy to enforce it, such as an action of debt thereon, it was held by this court, at the spring term? 1825, 3 Monroe, 204-8, in the case of Salter &c. vs. Richardson, that the effect of the endorsement did npt follow the latter remedy, by operation of law; and certainly the principle is more strong when applied to an execution, endorsed and returned, “no property found.”
Where the assignee of -a note given for the sale of land, after failing to make the money by fieri facias, endorsed bank notes would bo received, brings his bill to subject the land, and overreaches a mortgagee of the. purchaser, he'is not bound by his endorsement but may demand the specie an the sale.
Cases of the lien of the vendor upon the lands in the hands of subsequent purchasers, without notioe in Eno._ kmi, before3 and since the noUsonSstent. ” .
*290 Thc only plausible ground for a contrary decision in this case, is the consideration, that the present holders of this estate might have been induced to purchase under the belief, created by this endorsement, that bank notes would be taken, and therefore, Eubank, as against them, ought to be •Compelled to lose his lien to a greater extent. There could be no ground for such a belief at all; but if there was any, it could not reasonably be extended -lower than the value of the paper during the existence 'of Eubank’s offer to take it, in 1820, which would be of no use to the present parties. There is no pretext for saying that Eubank induced them, or any of them, to acquire an interest, by representing to them that he would take bank paper, other than his endorsement. Poston was well acquainted With his whole claim long before his mortgage, and so was Duncan, and all of them on the day of sale, were possessed of the extent of it, and there was then no execution existing with an endorsement, nor had there been for two years before, it is true, one witness states, that on the day of sale, Eubank stated that if they would pay him up, he would take paper; but this was after the sale was over, and not one of the parties availed themselves of his expressions by offering him the paper. To hind him by those expressions, would be as unreasonable as to ’ confine him to his former ineffectual endorsement. *
But it may be said, that as Poston is a mortgage creditor, he is, therefore, an exception to the general rule of liens following lands, for the purclia.se money; and that if by this- attitude, he is exempt from the effect of the lien, it would be wrong at the instance of Eubank, to increase the amount already decreed.
We grant that this doctrine of a lien remaining with a vendor, has undergone some changes and revolutions in the hands of different chancellors; some being disposed to carry it to a great extent, and some supposing it so delicate and weak, that it would expire at every stage of its-'advancement. If however, we pursue it through the English chance- *291 ry to the hour of our revolution, and then leave that country, from which we revolted, and pass down the channel of jurisprudence, adopted in Virginia, and in this State, the doctrine has both form and substance, and indeed much consistency, But if we remain in England, and entangle ourselves in, the pursuit of post, revolutionary and exploded cases, which are forbidden by law to be read in our courts, we readily grant that we may be brought to doubt, whether it exists any where except in the discretion of the chancellor. But whatever may have become of the doctrine ip England, since the revolution, or-whether it bp, or be not, the creation of a court of equity, it certainly - exists in this country, and we are unwilling to repeal it, because we conceive.we. have no.authority to do so.
Ante-rev.ok- and'subs^1508 quent cases in Virginia, c.on.cnr.Í!? the^ien1™-6 gainst a purchaser, with the'vende™
Mortgagee’s situation cantha^nurch^»ers.
We have already said, that this lien exists, and that it will, follow the lands into the hands of a purchaser with notice thereof, and it spems to. be conceded on all hands, that it would do so ev.e.n in England. This doctrine was maintained, by the court of appeals of Virginia, in Wilcox vs. Calloway, 1 Wash, 38; and afterwards enforced in the case of Cole vs. Scott, 2 Wash. 141; and to follow it sinpe, in the courts of that State, as well as in this, would, he a parade, of authority, savoring of ostentation. The court, in the case of Wilcox vs. Calloway, defines to us what an ipnocent purchaser means, who. is entitled to escape this lien; that is — “he must bp a complete purchaser, by having a. conveyance, and having also paid his purchase money before he has notice; for if he receives that, notice before either of these acts are perfected, he ought to stop, until the equity is inquired into, or he will be bound by it.” The same doctrine ' is acknowledged in 4 Wheat. 277.
Now, if it be once-granted', that- a purchaser, for a valuable consideration, with notice, must be affect-, ed by this lien, we cannot see how, or on what principle, abare mortgagee with notice can escape. The first parts with his money for the lands without fraud; the latter only takes the lands to secure *292 money which he has previously parted with, or is in danger of losing. The one takes a fee simple estate; the latter a bare temporary title for a sped** fied purpose. The interest of one is unconditional; that of the other is both conditional and defeasable, still leaving with the mortgagee, an equity which re-* mains till destroyed by lapse of time. If there be any difference between these titles, the balance is certainly in favor of the purchaser in point of merit, and yet he is to be affected by notice, and the mortgagee not! Certainly our doctrines of equity cannot be charged with such an inconsistency.
Whore the mortgagee of the estate has notice, the mortgagor had not paid the purchase money, ho, like a pur* chaser, obtains the estate subject to vendor’s li.cn.
But although we are unwilling to allow to the mortgagee an equal standing with an honest purchaser in all respects, yet if he obtains his mortgage without notice, so far, at least, as he has made advances before notice, we are willing to concede to him, an exemption from this lien for the purchase money-existing against the mortgagor; and we have done so at the present term, in the case of Wood vs. Bank of Kentucky—ante, page 194. Still we acknowledge that the right of the mortgagee to this favorable attitude, may be plausibly contested, and we shall see that it has endured a considerable struggle in a court of no ordinary dignity. But we are unwilling to give to the mortgagee an entire exemption from the effect of notice. Whether a judgment creditor, a stranger to the title against which the lien is claimed, could push his execution against such title, without being affected by notice, of such lien, we need not now enquire, as the case is not before us. For Poston is not sucha creditor^he is the receiver of a mortgage for an indemnity against responsibilities which he had previously incurred for Ritchie, with notice of the lien for the purchase money, and whoever will read this record attentively, must confess that his notice was complete and ample, and such as ,he has not pretended to deny; and if under such circumstances we should discharge him from the lien, which we will not let a meritorious purchaser for a full consideration escape, we might be justly charged with an inconsistency-, which no process of rea*, soiling known to vs would justify- or excuse.
Mortgagee hot having notice of tho purchase money remaining unpaid, shall have tho precedence, to the amount of his claim, at that time, but for his ad. ■vanees after notice, vendor of mortgagor, shall bo preferred, though be had acknowled,both in the deed and by his receipt the consideration money was fully paid.
Case of Bayley vs. Green-leaf &c. 7 Wheaton 46, reconciled with the pres- ■ ent-
—Mortgagee;. without notice of the vendor’s lien,, has the precedence, otherwise not, as in case of purchasers'.-
We will now see that in this opinion we are not singular. For the case of Duval vs. Bibb, 4 Hen. and Mun. is a strong case in support of the position we have taken. There the vendor of a tract of land had conveyed it for afull consideration,jacknowledged on the face of the deed to be in hand paid, and also had given a separate receipt at the foot of the deed, acknowledging the receipt of the money, which was recorded with that deed, but some of the purchase money was not actually paid. In this situation, Duval procured a mortgage on the estate, ignorant at the time, that any of the purchase money remained due. He was then informed of the lien for the purchase money, and after this information, he purchased up the equity of redemption, and completed his title. On a bill filed by the vendor, he was held to have the preferable lien over the vendor, as to all his advances to the vendee, before he received notice of the lien for tire purchase money, but as to all advances made after he received that notice, he was postponed to the vendor, and the estate subjected; thus, settling the principle as we have done, that he as mortgagee without notice, was entitled to a preference, but only so far as he had ignorantly made advances; and that for the future, he must be charged with all the consequences of notice. We have no doubt we could find, other cases recognizing the same principles, but-we deem it unnecessary.
We confess, vie should not have bestowed upon the subject this much attention, had it not been for meeting with the case of Bayley vs. Greenleaf &c. 7 Wheat. 46, decided by the supreme court of the United States, which on first blush, would seem to militate against the position which we have adopted. But on a more critical examination of that case, we are satisfied that it is not repugnaat to this. It is not pretended that the creditor who had accepted that mortgage, had notice of the lien when he accepted it, but the whole is an effort on the part of the vendor, to place the mortgage creditor in the situation of a volunteer; to assimulate him to the assignees of a bankrupt, or other alienees by operation of law, who generally take the estate in the same plight, and *294 subject to the same incumbrances, whether secret or made known, under which the bankrupt or former owner held it; in short, that a mortgagee, though ignorant of the lien, when he accepts his mortgage holds it as a mere pledge, and cannot be allowed the favored attitude of a purchaser, for a valuable consideration without notice. This doctrine, in an ahí opinion, was repelled by that court, and the mor;: gage creditor, ignorant of the lien when he took hi-mortgage, is allowed an exemption from the. lien an innocent purchaser would he, which accords with the decision of this court in the case of Woou vs„ tire Bank of Kentucky. But to say that the court iu that case meant to exempt from the effects of such a lien, every mortgage creditor, whether with, or without notice, would be extracting from it a principle which it does not contain.
Decisions of the Supreme court, are binding authority Oil questions of constitutional and general laws <jf the whole nation, but not on questions of municipal law.
Decision of the several questions.
. But if in this we should be mistaken, and the design of the case, is to liberate every mortgagor without discrimination, we should have no hesitation in departing from it, as untenable on principle, notwithstanding the high- standing of the court.from which the decision came. On the constitution and general laws of the whole nation, we subscribe t6 the supervising power of that court. But, oh questions of local law, the decision belongs to the local or state tribunals, and their decisions must be conclusive, and the opinion of the supreme court, can only be treated as persuasive evidence of law, and entitled to high regard on account of the acknowledged talents and acquirements of the judges, but they cannot bind as authority.
Upon the whole case, therefore, a majority of this court are of opinion, that Calloway has a lien on this estate; that this lien passed to Eubank, the assignee of the note; that neither Calloway or Eubank has done any thing which forfeits the lien; that Eu-bank did not, by his fruitless endorsement on an execution, once made, lessen that lien from the full amount of his judgment at law, in gold or silver, which the note on which it was founded, always secured to him, and that the court below erred in lessening his recovery by the scale of depreciation.
Directions for the orders a id {jg°rr00°jcJ°j to enforce the vendor’s Hen and raif3 ^
Decree,
Dissent.
He ought, therefore, first to have a provisional decree, rendered in his favor, that unless the defendants shall discharge that lien, by the payment of amount, of his judgment, before a certain day fixed in the next succeeding term, the estate shall be sold in discharge of his demand. If, on the arrival of that day, the money, with the ebsts of this suit is paid, then his lien is to be declared to be extinguish-eel, and the controversy ends. If on the arrival of that day, the money is not paid, then the court below, ought to direct the estate to be sold, or so much thereof as will discharge the amount, under the superintend anee and direction of some discreet commissioner, appointed by the court, and the proceeds thereof, to be appropriated to discharge the demand.
The decree must be reversed with costs, against Poston, Duncan, and Decreet, and the cause be remanded for such decree and proceedings, as shall conform to this opinion, and the usages and principles of equity.