THACKER, S.J., CONCURRING:
This court's decision to remand for the trial court to correct the sentence in this case turns entirely upon the fact that the original sentence was outside the range authorized by statute, and therefore, void. I concur fully with that conclusion and with the principal opinion's thorough analysis of that issue.
Because of the posture in which this case came before us, we also address the constitutional claims raised by Phon. Hereto I agree with the result and with most of the principal opinion's learned analysis. I write separately, however, because I believe that the appropriate analysis of what constitutes a "cruel and unusual punishment" is much simpler than that suggested by current U.S. Supreme Court precedent.
While this court may feel compelled to apply the convoluted rationale of the current majority of the federal Supreme Court to cases where existing precedent is controlling,[8] in cases that are beyond existing precedent and when applying the Kentucky Constitution, this Court should exercise its own independent judgment as to what the law is. Whether or not this case falls within existing precedent requires us to analyze Miller and Montgomery , as the principal opinion very ably does.
However, when addressing the subsequent question of whether to extend the protections of either the Eighth Amendment or of Section 17 of the Kentucky Constitution, we need only decide whether the punishment at issue is prohibited by the constitutional texts as written and according to their original meaning. In this case, that means asking whether a sentence of life in prison without the possibility of parole for a 16-year-old who murdered a mother and father and attempted to murder their twelve-year-old-daughter involves methods of punishment that had been considered "cruel and unusual" in the United States in 1791 or in Kentucky in 1891.[9] Framed in this light, the constitutional *311 issues raised by Phon are easily dispensed with.
To instead follow the current majority of the U.S. Supreme Court in presuming to discern and apply "evolving standards of decency" or "a moral consensus" in cases such as this is, in my view, a mistake-regardless of the result. Ultimately, that path presupposes that the U.S. Supreme Court may legitimately act as "the authoritative conscience of the Nation."[10]
I do not believe that this is the view of the majority in this case. To the contrary, in holding that Kentucky courts have no power to impose any sentence outside the range provided for by the General Assembly, the principal opinion clearly and correctly states that "[d]etermining what should be a crime and setting punishments for such crimes is a legislative function."[11] To give any credence to the "evolving decency" standard when carrying out this Court's independent constitutional analysis undermines the otherwise strong commitment to judicial restraint and respect for the separation of powers doctrine that is central to our unanimous resolution of this case by remanding for imposition of a statutorily authorized sentence.

In Eubank v. Poston, 5 T.B. Mon. 285, 21 Ky. 285, 294 (Ky. 1827), our predecessor court concluded that "[o]n the constitution and general laws of the whole nation, we subscribe to the supervising power of [the United States Supreme Court]", and therefore, "[d]ecisions of the Supreme Court are binding authority on questions of constitutional and general laws of the whole nation, but not on questions of municipal law." While this Court has adopted a deferential position with respect to the United States Supreme Court's precedent on federal constitutional matters, the constitutional footing for that assumption has been questioned. See Lee J. Strang, State Court Judges Are Not Bound by Nonoriginalist Supreme Court Interpretations, 11 FIU L. Rev. 327 (2016), available at http://ecollections.law.fiu.edu/lawreview/vol11/iss2/6.

See, e.g., Graham v. Florida, 560 U.S. 48, 99, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (THOMAS, J., dissenting) ("It is by now well established that the Cruel and Unusual Punishments Clause was originally understood as prohibiting torturous 'methods of punishment,'-specifically methods akin to those that had been considered cruel and unusual at the time the Bill of Rights was adopted[.]") (internal citations omitted).

Roper v. Simmons, 543 U.S. 551, 616, 125 S.Ct. 1183, 161 L.Ed.2d 1 (SCALIA, J, dissenting) ("If the Eighth Amendment set forth an ordinary rule of law, it would indeed be the role of this Court to say what the law is. But the Court having pronounced that the Eighth Amendment is an ever-changing reflection of 'the evolving standards of decency' of our society, it makes no sense for the Justices then to prescribe those standards rather than discern them from the practices of our people. On the evolving-standards hypothesis, the only legitimate function of this Court is to identify a moral consensus of the American people. By what conceivable warrant can nine lawyers presume to be the authoritative conscience of the Nation?").

Principal Opinion, p. 303.