RENDERED: APRIL 26, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000468-DG

SOPHAL PHON APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2014-CA-000073
WARREN CIRCUIT COURT
NOS. 96-CR-00599 & 96-CR-00599-005

COMMONWEALTH OF KENTUCKY APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING IN PART, REVERSING IN PART, AND REMANDING**

In August of 1996, Sophal Phon (Phon), along with four other gang members, participated in the brutal murder of two people and the deadly assault of a twelve-year-old girl. Phon was under the age of eighteen at the time of the murders. He ultimately entered a guilty plea before the Warren Circuit Court and a jury was empaneled for a sentencing hearing. After a full opportunity to present evidence, the jury recommended that Phon be sentenced to life imprisonment without the possibility of parole ("LWOP"). The Warren Circuit Court sentenced Phon accordingly. Phon now appeals the denial of his third Rule of Criminal Procedure (RCr) 11.42 motion and his second Rule of

Civil Procedure (CR) 60.02 motion. For the foregoing reasons, this Court affirms in part and reverses in part the opinion of the Court of Appeals and remands to the Warren Circuit Court.

## I. BACKGROUND

Phon, a member of a gang, entered the home of Khamphao Phromratsamy and Manyavanh Boonprasert in August 1996. At the direction of the gang leader, Phon killed Khamphao and Manyavanh, execution style. He also shot their twelve-year-old daughter in the head but she miraculously survived. Phon claimed that the then twenty-six-year-old leader of the gang had instructed him to execute the victims and he complied in fear of retribution.

Phon and the five other gang members were charged and indicted in 1996, when Phon was sixteen years old.[1] Phon was indicted on two counts of murder; assault, first degree; robbery, first degree; and burglary, first degree. The Commonwealth noticed Phon of its intent to seek the death penalty in his case. In order to assist Phon in escaping this harshest penalty, Phon's attorney recommended that he enter a guilty plea and they present a case of mitigation to a jury for sentencing. Due to the recently-passed 1998 House Bill 455 in Kentucky, the sentence of LWOP was a new statutory punishment.

---

[1] There is some dispute as to whether Phon was sixteen or seventeen years old at the time of the crimes. For purposes of this appeal, we will accept Phon's claim that he was only sixteen.

2

Phon consented that the sentence be available to the jury as an option.[2] The Commonwealth still sought the death penalty before the jury.

Phon presented a robust case of mitigation evidence to the jury. His family members and experts testified about: Phon's upbringing in a politically hostile and tyrannical country; his family's refuge in Thailand; how three of Phon's brothers had died of starvation during their time of refuge; the deplorable and inhumane conditions in the refugee camp; the tragic death of Phon's younger brother after they had reached the United States; and Phon's IQ of 74 and the effect it had on his judgment. After hearing all the evidence, the jury was given several options for sentencing: death, LWOP, life without the possibility of parole for 25 years (LWOP 25), life imprisonment, or twenty years or more. The jury, after finding the presence of an aggravator at the time of the murders, recommended that Phon be sentenced to LWOP, which was subsequently imposed by the circuit court.

Phon filed his first RCr 11.42 motion before his formal sentencing, claiming ineffective assistance of counsel for failing to explain the inclusion of LWOP as an available penalty and the failure to make a timely appeal, among other corollary arguments. The trial court denied Phon relief and the Court of Appeals affirmed, finding that the trial court's decision was well-supported and

---

[2] This Court certified the law for the Attorney General, after Phon had entered a guilty plea and been sentenced, holding that "upon the unqualified consent of the defendant, a sentence of life without parole may be lawfully imposed for capital crimes committed before July 15, 1998." *Commonwealth v. Phon*, 17 S.W.3d 106, 108 (Ky. 2000).

3

Phon had failed to establish his claim. *Phon v. Commonwealth*, 51 S.W.3d 456, 458-61 (Ky. App. 2001).

After the United States Supreme Court's decision in *Roper v. Simmons*, holding that the death sentence was unconstitutional as applied to juveniles, *see generally Roper v. Simmons*, 543 U.S. 551 (2005), Phon filed for further post-conviction relief. The circuit court denied the motion and the Court of Appeals again affirmed. *Phon v. Commonwealth*, No. 2006-CA-002456-MR, 2008 WL 612283, *1 (Ky. App. March 7, 2008). The Court determined that "Phon was advised by counsel of the then existing possible penalties." *Id.* at *4. "Just as Phon cannot now change his guilty plea because the maximum penalty would no longer apply, he cannot now obtain a new sentencing hearing simply because the maximum penalty would no longer apply." *Id.*

In June 2013, Phon made a third attempt for post-conviction relief, citing new United States Supreme Court cases relating to the imposition of LWOP sentences against juvenile offenders. Phon requested a new sentencing hearing pursuant to RCr 11.42 and CR 60.02. The Court of Appeals denied all relief. This Court granted discretionary review, leading to the appeal before us now.

## II.    STANDARD OF REVIEW

Whether to grant relief pursuant to CR 60.02 is a matter left to the "sound discretion of the court and the exercise of that discretion will not be disturbed on appeal except for abuse." *Brown v. Commonwealth*, 932 S.W.2d 359, 362 (Ky. 1996) (quoting *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959)). We also review a trial court's denial of RCr 11.42 relief for an abuse of

4

discretion. *Teague v. Commonwealth*, 428 S.W.3d 630, 633 (Ky. App. 2014). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Foley v. Commonwealth*, 425 S.W.3d 880, 886 (Ky. 2014) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (internal citations omitted)). However, also presented to this Court are several issues of law including questions of constitutionality and statutory interpretation. On these issues, we review conclusions of law *de novo*. *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007).

### III. ANALYSIS

#### A. PHON'S CONSTITUTIONAL CLAIMS MUST FAIL.

Phon's argument to this Court encompasses several interrelated Constitutional claims, both pursuant to the United States Constitution and the Kentucky Constitution. He claims, first, that LWOP is an unconstitutional sentence for all juveniles, even when the sentencing procedure is discretionary rather than mandatory. Phon next contends that if discretionary LWOP sentencing for juveniles is constitutionally permissible, there must be specific findings that the juvenile in question is "permanently incorrigible" for the sentence to be found constitutionally proportionate to the crime. And last, Phon argues that his sentence is prohibited by Kentucky's Constitution.

For the reasons stated herein, we affirm the Court of Appeals' opinion in part and hold that LWOP for juveniles is not constitutionally prohibited when the sentencing procedures comply with the holdings of *Miller v. Alabama*, 567

5

U.S. 460 (2012). Specifically, there must be an adequate opportunity for the judge or jury sentencing the offender to consider the offender's youth and background to determine whether LWOP is appropriate, given the circumstances of the crime. We hold that there is no specific fact-finding required before imposing LWOP in these cases and Phon's sentence was not unconstitutionally disproportionate to his crime. Additionally, we hold that the Kentucky Constitution does not prohibit juveniles from being sentenced to LWOP under a discretionary, thorough sentencing procedure.

### 1. The Eighth Amendment of the Federal Constitution does not prevent the discretionary imposition of LWOP as to juveniles.

Phon first argues that his sentence is already prohibited by the Eighth Amendment of the United States Constitution, pursuant to precedent from the United States Supreme Court. Relevant to his argument are two integral cases: *Miller v. Alabama* and *Montgomery v. Louisiana.* Based on the language of those cases, however, we hold that the United States Supreme Court has limited its absolute prohibition to *mandatory* LWOP sentences for juveniles.

### a) *Miller v. Alabama.*

*Miller v. Alabama* involved two fourteen-year-old offenders who had each been convicted of murder and sentenced to LWOP. 567 U.S. at 465. In each case, the state law required the LWOP sentence without any consideration of each offender's youth, background, or other circumstances. *Id.* The Court held "that mandatory life without parole for those under the age of 18 at the

6

time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Id.*

"The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'" *Id.* at 469 (quoting *Roper*, 543 U.S. at 560). "That right ... 'flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned' ' to both the offender and the offense." *Miller*, 567 U.S. at 469 (quoting *Roper*, 543 U.S. at 560 (quoting *Weems v. United States*, 217 U.S. 349, 367 (1910))). Thus, "proportionality is central to the Eighth Amendment." *Miller*, 567 U.S. at 469 (quoting *Graham v. Florida*, 560 U.S. 48, 59 (2010)). Proportionality is then viewed "according to ' 'the evolving standards of decency that mark the progress of a maturing society.' '" *Miller*, 567 U.S. at 469 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 1010 (1958) (plurality opinion))).

The Court reflected on its recent opinions in *Roper* and *Graham*. "*Roper* held that the Eighth Amendment bars capital punishment for children, and *Graham* concluded that the Amendment also prohibits a sentence of [LWOP] for a child who committed a nonhomicide offense." *Miller*, 567 U.S. at 470. Following the logic and understanding in those cases, the Court recognized "that children are constitutionally different from adults for purposes of sentences." *Id.* at 471. Especially important in that distinction is that the usual "penological justifications" for certain sentences are either lessened or completely inapplicable to juvenile offenders. *See id.* at 472-73. Thus, "[m]ost

7

fundamentally ... youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole." *Id.* at 473.

Contrary to this distinction, the sentencing schemes at issue in *Miller* treated each offender the same, without recognizing the diversity:

> But the mandatory penalty schemes at issue here prevent the sentence from taking account of these central considerations. By removing youth from the balance—by subjecting a juvenile to the same [LWOP] sentence applicable to an adult—these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment *proportionately* punishes a juvenile offender. ... [I]mposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.

*Id.* at 474 (emphasis added). The Court emphasized the harshness of mandatory penalties as they, "by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at 476. The Court held "that the Eighth Amendment forbids a sentencing scheme that mandates [LWOP] for juvenile offenders." *Id.* at 479. Underpinning its holding was the Court's recognition that "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id.*

The Court declined to address whether the Eighth Amendment categorically bans LWOP as a sentence for any age group but emphasized that it felt "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id.* The Court, in fact, specifically stated that it "[did] not foreclose a sentencer's ability to make that judgment in homicide

8

cases" but merely required that the sentence "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

### b)     *Montgomery v. Louisiana.*

After the *Miller* decision, the United States Supreme Court was faced with whether that decision was retroactive in *Montgomery v. Louisiana.* __ U.S. __, 136 S.Ct. 718, 725 (2016). The Court determined that the retroactivity of the ruling depended upon whether the holding was procedural or substantive in nature. *Id.* at 729-30. "It follows, as a general principle, that a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced." *Id.* at 731.

The Court determined that "*Miller* announced a substantive rule that is retroactive in cases on collateral review." *Id.* at 732. Recognizing the general holding of *Miller,* the *Montgomery* Court went further and stated that "*Miller,* then, did more than require a sentencer to consider a juvenile offender's youth before imposing [LWOP]; it established that the penological justifications for [LWOP] collapse in light of 'the distinctive attributes of youth.'" *Id.* at 734 (quoting *Miller,* 567 U.S. at 472). Because LWOP was deemed appropriate for only "the rare juvenile offender whose crime reflects irreparable corruption," *Montgomery,* 136 S.Ct. at 734 (quoting *Miller,* 567 U.S. at 479-80 (quoting *Roper,* 543 U.S. at 573)), the ruling also "rendered [LWOP] an unconstitutional penalty for 'a class of defendants because of their status'—that is, juvenile

9

offenders whose crimes reflect the transient immaturity of youth." *Montgomery*, 136 S.Ct. at 734 (citing *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)). Thus, *Miller* dealt with a substantive rule rather than merely a procedural one.

Although the Court commented on the substantive nature of the rule, it limited the holding to "requir[ing] a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that [LWOP] is a proportionate sentence." *Montgomery*, 136 S.Ct. at 734 (citation omitted). The Court once again emphasized the differences between juvenile offenders and adult offenders, focusing on the need for individualized assessment of the youthful characteristics of the offender. The Court determined that *Miller*, "[l]ike other substantive rules, ... is retroactive because it ' 'necessarily carr[ies] a significant risk that a defendant' '—here, the vast majority of juvenile offenders— ' 'faces a punishment that the law cannot impose upon him.' '" *Id.* (quoting *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) (quoting *Bousley v. United States*, 523 U.S. 614, 620 (1998))). Thus, the rule applied retroactively to the petitioner's case before the Court.

### c) The Supreme Court's rulings do not forbid discretionary LWOP sentences for juveniles.

Phon argues that the Supreme Court's rulings forbidding LWOP for juvenile offenders applies to his case because "[t]he jury in this case did not consider or make the requisite findings under *Miller*." Because there was no specific finding by the jury or the court that Phon's crimes "reflect irreparable

corruption" rather than being a result of "transient immaturity," Phon argues that the LWOP sentence was therefore unconstitutionally disproportionate, or, at least, *may* be and, therefore, Phon is entitled to re-sentencing.

However, Phon conflates the dicta in the United States Supreme Court's opinion discussing the qualities of youthful offenders with its much narrower holding. The limited holding in *Miller* was clear:

> *Graham, Roper,* and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory-sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.

*Miller,* 567 U.S. at 489. The Court did not outlaw LWOP as a possible sentence for juveniles but deemed that a *mandatory* sentence of LWOP without attention to any of the attendant circumstances of youth violates the requirement of proportionality under the Constitution.

Although both *Miller* and *Montgomery* caution courts about the "rare" juvenile offender whose crimes merit LWOP, this language is dicta and guidance. Even *Montgomery* was very clear in the specific holding and directive to the courts: "*Miller* requires a sentencer to *consider* a juvenile offender's youth and attendant characteristics before determining that [LWOP] is a proportionate sentence." *Montgomery,* 136 S.Ct. at 734 (citing *Miller,* 567 U.S. at 483) (emphasis added). The *Montgomery* court also clarified what was and was *not* required under *Miller:* "*Miller,* it is true, did not bar a punishment for

11

all juvenile offenders, as the Court did in *Roper* or *Graham*. *Miller* did bar life without parole, however, for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Id.*

Based on this language, we cannot hold that *all* discretionary sentencing schemes permitting LWOP as a sentence for juvenile offenders offend the parameters of the Eighth Amendment. In contrast to these mandatory schemes, Phon had an extensive sentencing hearing. He presented multiple witnesses to present a case of mitigation. His attorneys expressed the limits of his judgment due to his younger age. His family members explained his harsh upbringing. All of these factors were presented to the jury. That jury had an opportunity to consider his age and his "youthful" characteristics. The Constitution guarantees an opportunity for the sentencer to *consider* these characteristics; it does *not* require that the sentencer accept those characteristics as worthy of mitigating an LWOP sentence. As such, Phon's sentencing did not violate the Eighth Amendment of the federal Constitution as interpreted under *Miller* and *Montgomery*.

### 2. This court is unwilling to extend the protections of the Eighth Amendment beyond existing precedent.

As we have concluded that the Supreme Court's precedent does not hold that discretionary LWOP sentences for juveniles violate the Eighth Amendment, we must now determine whether the protections of the Eighth Amendment should be extended to ban such sentences under all circumstances. In many ways, we acknowledge that this discussion is highly theoretical as applied in

Kentucky. As both the parties in this case recognize, only two prisoners are serving LWOP sentences in Kentucky for crimes committed as juveniles. Phon is one of those offenders. This Court has recognized that the legislature's statutes have limited the harshest sentence for capital offenses committed while the offender is a juvenile to LWOP 25. *See* KRS 640.040; *Shepherd v. Commonwealth*, 251 S.W.3d 309 (Ky. 2008). LWOP is not a permissible sentence for such offenders like Phon under our statutory scheme. However, that statutory scheme is always subject to change. As such, it is still important, both for the instant case and for the constitutional precedent of this Court, to understand whether such a sentence is even constitutionally permissible.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be 'cruel and unusual.'" *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). The standard for what constitutes "cruel and unusual" is "flexible and dynamic." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 171 (1976)). "No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Rhodes*, 452 U.S. at 346 (quoting *Trop*, 356 U.S. at 101).

The United States Supreme Court classifies its Eighth Amendment precedent into "two general classifications": "challenges to the length of term-of-years sentences given all the circumstances in a particular case ... [and

challenges to] the proportionality standard ... [involving] the death penalty." *Graham v. Florida*, 560 U.S. 48, 59 (2010). The first type of challenge is an individualized review that "compar[es] the gravity of the offense and the severity of the sentence." *Id.* (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991)). The second challenge, however, looks to "the nature of the offense" or to "characteristics of the offender" to determine whether the punishment in question is categorically unconstitutional for that offense or that class of offender. *Graham*, 560 U.S. at 60-61.

Here, Phon makes a combined argument. First, he argues that LWOP for juveniles is categorically unconstitutional, even under a discretionary sentencing scheme with an opportunity to present mitigating evidence. Second, he argues that without specific factual findings of incorrigibility, the sentence is categorically unconstitutional. Within this argument, Phon also seems to argue that his sentence is disproportionate as applied to him because the jury failed to adequately consider all the mitigating evidence. Thus, we shall address each of these arguments in turn.

> **a)** **A discretionary punishment with constitutional protections does not always equate to cruel and unusual punishment.**

First, Phon argues that LWOP for juveniles should be categorically banned as unconstitutional under the Eighth Amendment. According to the United States Supreme Court, this requires an examination of "objective indicia of society's standards" and "the exercise of [the Court's] own independent

14

judgment whether the punishment in question violates the Constitution."
*Graham*, 560 U.S. at 61 (quoting *Roper*, 543 U.S. at 572).

Amicus has provided this Court a thorough and helpful examination of the current condition of juvenile LWOP sentences in the nation. Although amicus argues it shows a clear trend that the nation has recognized such a sentence is cruel and unusual, this Court is not so convinced by these objective indicia. Nineteen jurisdictions have abolished LWOP for juveniles, but still more states allow the sentence while limiting it. Additionally, while Kentucky's statutes do not list LWOP as a permissible sentence for juveniles, and have not for over fifty years, that interpretation has not always been so clear. It was not until this Court's decision in *Shepherd v. Commonwealth*, 251 S.W.3d 309 (Ky. 2008), that we made clear that LWOP was not a permissible sentence under the juvenile code. Even that decision, which we will discuss more in depth, is an interpretation of the absence of statutory language rather than a clear legislative directive of exclusion.

An enlightened society's goal should, ideally, be to continue to trench the dredges of humanity and constantly evolve to better support the existence of the community. Thus, our "evolving standards of decency" are constantly changing and, hopefully, improving. This, while encouraging for our state of living, creates a difficulty in examining long-past cases in which the punishment is now being called "cruel and unusual" under the current society's standards. "Not bound by the sparing humanitarian concessions of our forebears, the [Eighth] Amendment also recognizes the 'evolving standards

15

of decency that mark the progress of a maturing society.'" *Ford v. Wainwright*, 477 U.S. 399, 406 (1986) (quoting *Trop*, 356 U.S. at 101). The standard is ever evolving, which is why "[i]n addition to considering the barbarous methods generally outlawed in the 18th century, therefore, [courts] take[] into account objective evidence of contemporary values before determining whether a particular punishment comports with the fundamental human dignity that the Amendment protects." *Ford*, 477 U.S. at 406 (citing *Coker v. Georgia*, 433 U.S. 584, 597 (1977) (plurality opinion)). So we must look to the standards of decency contemporary to the time of Phon's sentence.

At the time Phon was sentenced, he was eligible for the death penalty. At that time, numerous jurisdictions permitted capital punishment for juveniles. The United States Supreme Court decision outlawing such a penalty was not until 2005. Thus, when we not only examine the evolved standard of decency currently, but examine the standards at the time Phon was sentenced, there was no unanimity or agreement as to the proper way to sentence a juvenile within the context of the brutal circumstances like those of the case at hand.

Thus, we are unconvinced that these state and national trends show us a clear consensus against the appropriateness of LWOP for juveniles in *all* circumstances. We agree and acknowledge the United States Supreme Court's thorough examination of the differences between juveniles and adults, the rare occasion that may call for such a harsh sentence for juveniles, and the implicit warning to use such a sentence sparingly. However, that does not necessarily equate to a consensus that the sentence is always, and in every circumstance,

16

unacceptable by this Commonwealth, or this nation. But, "[c]ommunity consensus, while 'entitled to great weight,' is not itself determinative of whether a punishment is cruel and unusual." *Graham*, 560 U.S. at 67 (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 434 (2008)).

Thus, we must independently examine whether such a sentence affronts the values inherent in the Eighth Amendment. "The judicial exercise of independent judgment requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question." *Graham*, 560 U.S. at 67 (citations omitted). We must remember that a categorical ban determines that the sentence is disproportionate in all circumstances or the danger of utilizing a disproportionate sentence is too great to allow even the option for the sentencer to utilize it. *See Graham*, 560 U.S. at 77-78. In *Graham*, the Supreme Court distinguished the nonhomicide case before it with juvenile offenders accused of homicide. *See id.* at 69. The Court recognized a significant distinction "between homicide and other serious violent offenses against the individual." *Id.* (citing *Kennedy*, 554 U.S. at 436-39).

In a concurring opinion to *Graham*, Chief Justice Roberts disagreed with the creation of a new categorical rule, instead believing that the standard narrow proportionality review would be sufficient to protect the constitutional rights at issue. *Graham*, 560 U.S. at 86 (Roberts, C.J., concurring in the judgment). The Chief Justice recognized that:

A more restrained approach is especially appropriate in light of the Court's apparent recognition that it is perfectly legitimate for a juvenile to receive a sentence of life without parole for committing murder. This means that there is nothing *inherently* unconstitutional about imposing sentences of life without parole on juvenile offenders; rather, the constitutionality of such sentences depends on the particular crimes for which they are imposed.

*Id.* at 94. Although a juvenile's culpability may be more diminished than similar adult offenders, "that does not mean that their culpability is always insufficient to justify a life sentence." *Id.* (citation omitted). In fact, the Chief Justice recognized that "[s]ome crimes are so heinous, and some juvenile offenders so culpable, that a sentence of life without parole may be entirely justified under the Constitution." *Id.* at 96. Instead, he recommended that the Court recognize the disproportionate nature of Graham's sentence under an individualized review and continue to allow judges and juries the discretion to impose LWOP sentences in certain nonhomicide, juvenile cases. *See id.* at 96. "[T]he whole enterprise of proportionality review is premised on the 'justified' assumption that 'courts are competent to judge the gravity of an offense, at least on a relative scale.'" *Id.* (quoting *Solem v. Helm*, 463 U.S. 277, 292 (1983)). Thus, the ultimate decision should be left to judges and juries to apply this harsh penalty upon the most heinous crimes and the traditional proportionality review should be employed to ensure that each sentence is constitutionally appropriate.

We, like Chief Justice Roberts, remain unconvinced that certain incidents of crime will never rise to the level of culpability and incorrigibility that would warrant the imposition of LWOP on a juvenile. We acknowledge

18

that the theoretical imposition of LWOP for a crime committed when the offender was a juvenile seems harsh on its face. However, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. For now, we hold that the imposition of LWOP for an offender who committed homicide as a juvenile is not prohibited under the Eighth Amendment. We are unwilling, at this time, based on the current objective indicia of society and this Court's independent reasoning, to extend the protections of the Eighth Amendment to prohibit LWOP in all circumstances after a constitutional sentencing where that offender has the opportunity to present a full case of mitigation. Such a process allows full opportunity for the judge or jury to determine the reprehensibility of the crime, the culpability of the offender, but to also hear evidence of and consider that offender's youth and particularized circumstances.

> **b)** **_Miller_ and _Montgomery_ do not require specific factual findings for the imposition of LWOP.**

Alternatively, Phon also argues that without specific findings of incorrigibility from the trial court or jury, an LWOP sentence is disproportionate for juveniles. Thus, LWOP may not be constitutionally prohibited for all juveniles but requires certain specific factual findings before such a sentence is constitutionally sound. However, such an argument is contrary to the explicit language in *Montgomery*.

19

In its argument before the Court in *Montgomery*, the state of Louisiana argued that there was no distinction between juvenile crimes due to "transient immaturity" and those due to "irreparable corruption" as "*Miller* did not require trial courts to make a finding of fact regarding a child's incorrigibility." 136 S.Ct. at 735. In responding to this argument, Justice Kennedy stated "[t]hat this finding is not required, however, speaks only to the degree of procedure *Miller* mandated in order to implement its substantive guarantee." *Id.* Justice Kennedy emphasized that the United States Supreme Court "is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems." *Id.* (citing *Ford*, 477 U.S. at 416-17). The Court was clear in stating "[t]hat *Miller* did not impose a formal factfinding requirement does not leave States free to sentence a child whose crime reflects transient immaturity to life without parole." *Montgomery*, 136 S.Ct. at 735.

Rather than emphasizing some hypothetical fact-finding for the jury or trial judge, the holding in *Miller* was limited. "*Miller* requires a sentencer to *consider* a juvenile offender's youth and attendant characteristics before determining that [LWOP] is a proportionate sentence." *Id.* (citing *Miller*, 567 U.S. at 483) (emphasis added). To hold that the courts must undergo a narrow and highly specific fact-finding mission would be contrary to this unequivocal language from the United States Supreme Court and an invasion of the province of the jury. It is up to the judge and jury to determine whether a constitutionally permissible sentence is appropriate for the circumstances. So

20

long as the mitigating factors of youth and youthful characteristics are considered, there is no necessity for a specific finding of "irreparable corruption" or "permanent incorrigibility."

### c) Phon's sentence is not unconstitutionally disproportionate to his crime.

"The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham*, 560 U.S. at 59 (quoting *Weems*, 217 U.S. at 367). This restriction is "a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *Graham*, 560 U.S. at 59-60 (quoting *Harmelin*, 501 U.S. at 997, 1000-01 (Kennedy, J., concurring in part and concurring in judgment)).

The United States Supreme Court has explained the "approach for determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime." *Graham*, 560 U.S. at 60. The Court "begin[s] by comparing the gravity of the offense and the severity of the sentence." *Id.* (citing *Harmelin*, 501 U.S. at 1005). If the case before it represents a "rare" conclusion of "gross disproportionality," then the Court should compare the sentence to other offenders in the jurisdiction and other sentences for the same crime in other jurisdictions. *Graham*, 560 U.S. at 60 (citing *Harmelin*, 501 U.S. at 1005).

21

In our review of the facts underlying this case, this Court believes the sentence in question was constitutionally proportionate to the crime. Despite all of Phon's background, age, and immaturity, he willingly chose to execute two innocent victims. He participated in a terrifying display of power to an entire family before finally executing two people. He also shot a twelve-year-old child, who miraculously survived. We will not hold that LWOP is grossly disproportionate to the horrific circumstances of this crime.

### 3. The Kentucky Constitution does not prevent the discretionary imposition of LWOP as to juveniles.

Phon also argues, alternatively, that his sentence is prohibited under the Kentucky Constitution, Section 17. Under the Kentucky Constitution, "a method of punishment is cruel and unusual if it shocks the moral sense of all reasonable men as to what is right and proper under the circumstances." *Baze v. Rees*, 217 S.W.3d 207, 210 (Ky. 2006) (citing *Weber v. Commonwealth*, 196 S.W.2d 465 (Ky. 1946) and *Weems*, 217 U.S. 349). Phon bases a majority of this argument upon the language in *Workman v. Commonwealth* from this Court's predecessor. There, the Court stated that "we are of the opinion that life imprisonment without benefit of parole for two fourteen-year-old youths under all the circumstances shocks the general conscience of society today and is intolerable to fundamental fairness." *Workman v. Commonwealth*, 429 S.W.2d 374, 378 (Ky. 1968). Additionally, the Court went on to state that it "believe[d] that incorrigibility is inconsistent with youth; that it is impossible to

22

make a judgment that a fourteen-year-old youth, no matter how bad, will remain incorrigible for the rest of his life." *Id.*

The language of *Workman* is persuasive and gives this Court pause. However, we must consider the facts and circumstances of the *Workman* decision. At the time, "[r]ape [was] the only offense in this jurisdiction where punishment without benefit of parole [could] be inflicted." *Id.* at 377. In *Workman*, the juvenile offender and his accomplice, both fourteen-years-old, broke into an elderly woman's home and raped, assaulted, and robbed her. *Id.* at 375-76. Their victim survived and both juveniles were charged with forcible rape. *Id.* at 275-76. The facts of the case, as horrendous as they are, are distinguishable from the case at hand.

Phon admitted to killing two people, assaulting a twelve-year-old child, all in furtherance of gang activity. Phon was at least sixteen years old, if not seventeen years old as the Commonwealth argued, at the time of the offense. He was over eighteen years of age by the time he was sentenced by a jury. The facts in the *Workman* case, while deplorable and inhumane, left a live victim. Here Phon not only took the lives of two innocent victims, but left a child victim, a witness to her own parents' execution. The cases are distinguishable and lead to us to the conclusion that a juvenile LWOP sentence is, at times, constitutionally permissible. Once again, while we hold to the logic of *Workman* for that particular case, we are unwilling to say that the issuance of an LWOP sentence is *always* unconstitutional given the seriousness of the crime. We therefore hold that the imposition of an LWOP sentence for a

23

juvenile under *certain circumstances* does not offend the Kentucky Constitution.

## B. THIS COURT MUST HOLD THAT PHON'S SENTENCE WAS STATUTORILY PROHIBITED.

Phon made an additional statutory argument to the Court of Appeals that we feel we must also address. In his latest RCr 11.42 and CR 60.02 motion to the circuit court, Phon argued that KRS 640.040(1) limits available punishments for capital crimes committed by juveniles to LWOP 25. He also argued he did not expressly waive his statutory protections under the juvenile code to allow LWOP as a potential sentence. The circuit court denied the motions and held KRS 640.040(1) was a permissive listing of sentences rather than a limitation to LWOP 25. When Phon appealed to the Court of Appeals, he cited to this Court's decision in *Shepherd v. Commonwealth*, 251 S.W.3d 309 (Ky. 2008), conclusively holding that LWOP was an impermissible sentence under KRS 640.040. The Court of Appeals agreed that *Shepherd*'s interpretation of KRS 640.040 was a ban on LWOP for juveniles but held that Phon had failed to timely raise the issue under RCr 11.42 within three years. *Shepherd* was decided in 2008 and Phon filed his motion in 2013.

### 1. Phon's proceedings as a "youthful offender."

On November 13, 1996, the Warren District Court judge entered an order that Phon was to be transferred to the Warren Circuit Court to be tried as a youthful offender. On July 5, 1998, Phon entered a guilty plea and requested a sentencing hearing by jury. After the jury's recommendation, Phon appeared in open court on August 24, 1998 to be sentenced. The circuit court imposed

24

the recommended sentence of LWOP and ordered that Phon be delivered to the custody of the Department of Corrections (Phon was, at that time, over the age of eighteen, even according to the later birth date given by his mother during the sentencing hearing).

At the time Phon was sentenced, KRS 640.040 (the version as enacted July 15, 1998) stated that "[a] youthful offender convicted of a capital offense regardless of age may be sentenced to a term of imprisonment appropriate for one who has committed a Class A felony and may be sentenced to life imprisonment without benefit of parole for twenty-five (25) years." It is undisputed that, after the legislature added LWOP as a potential penalty in the penal code, LWOP was never added as an enumerated sentence within this portion of the juvenile code.

### 2. *Shepherd v. Commonwealth.*

Michael Shepherd was prosecuted as a youthful offender for murder, first-degree robbery, and tampering with physical evidence. *Shepherd*, 251 S.W.3d at 311-12. At sentencing, the jury was given four options: (1) twenty to fifty years; (2) life imprisonment; (3) LWOP 25; and (4) LWOP. *Id.* at 320-21. The jury recommended LWOP 25. *Id.* at 321.

This Court determined the inclusion of LWOP as a potential sentence was error. *Id.* KRS 640.040(1) states: "[a] youthful offender convicted of a capital offense regardless of age may be sentenced to a term of imprisonment appropriate for one who has committed a Class A felony and may be sentenced to life imprisonment without benefit of parole for twenty-five (25) years." Under

25

KRS 532.060(2)(a), a Class A felony is eligible for sentencing of twenty to fifty years, or life imprisonment. This Court held:

> Although KRS 532.030(1) does allow a person convicted of a capital offense to also be sentenced to life without parole, the trial court classified Shepherd as a youthful offender pursuant to KRS 640.010. Thus, the youthful offender chapter governs his appropriate sentencing considerations. According to KRS 640.040, Shepherd's statutorily authorized penalties were twenty to fifty years, life in prison, or [LWOP 25].

*Id.* Thus, this Court interpreted the provision of KRS 640.040(1) to be an exhaustive listing of potential penalties for juveniles convicted of a capital offense: all the penalties for Class A felonies (twenty to fifty years or life) and LWOP 25.

### 3. *Shepherd* was a clarification of law, thus applying to Phon's case.

The next question becomes whether this interpretation of KRS 640.040(1) should be applied to Phon's case. The relevant portion of the statute itself is identical to the language in effect at the time of Phon's sentencing. However, the judicial construction of that statute did not occur until 2008. Thus, we must determine whether the opinion applies retroactively and whether Phon made an appropriate plea for relief in relation to the statutory claim.

Under United States Supreme Court precedent, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are accounted." *Leonard v. Commonwealth*, 279 S.W.3d 151, 159 (Ky. 2009) (quoting *Teague v. Lane*, 489 U.S. 288, 310 (1989)). However, "[w]hen questions of state law are at issue, state courts generally have the authority to

26

determine the retroactivity of their own decision." *Leonard*, 279 S.W.3d at 160

(quoting *American Trucking Assoc., Inc. v. Smith*, 496 U.S. 167, 177 (1990)

(plurality opinion)). In *Leonard*, this Court had to decide the retroactivity of a

new rule allowing litigation of palpable errors determined on direct appeal to be

re-litigated in an RCr 11.42 claim. *Leonard*, 279 S.W.3d at 157. Because the

rule was "not of a constitutional dimension," the "Court [was] free to adopt

whatever standard of retroactivity it [found] reasonable." *Id.* at 160.

The *Leonard* Court distinguished between "new" rules and clarifications

of law. *Id.* at 161. In that case, the Court determined the rule was new as it

"broke new ground by allowing claims that were procedurally barred under the

prior case law." *Id.* It determined that the new rule could not "be applied

retroactively to such collateral attacks that were final when it was decided," but

allowed it to retroactively apply to collateral attacks still pending at the time it

was decided. *See id.* at 162.

We find the language of the *Leonard* Court illuminating for determining

whether our ruling in *Shepherd* applies to Phon's case. Unlike in *Leonard*,

*Shepherd* did not announce a new rule. It was merely a later interpretation of

a statute that had been, in relevant portion, unchanged since 1998. There was

no case law prior to 2008 interpreting the statute differently. As such, we

cannot say it was a new rule but was merely, instead, a clarification of existing

law. Thus, because *Shepherd* was merely a clarification of an already existing

statute, that remained in relevant form identical to the version existing at the

time of Phon's sentencing, we must apply our legal holding in *Shepherd*

27

retroactively. Therefore, at the time of Phon's sentencing, LWOP 25 would have been the maximum permissible sentence and LWOP was not allowable under the juvenile code.

### 4. Phon's sentence is statutorily prohibited and this Court cannot condone an illegal sentence.

Applying *Shepherd* to Phon's case leads to the conclusion that Phon's sentence was statutorily prohibited. The Court of Appeals determined that Phon did not bring a timely claim to address this potential statutory issue of his sentence. The *Shepherd* case was decided in 2008 and Phon did not bring this particular collateral attack until 2013.[3] However, under this Court's ruling in *McClanahan v. Commonwealth*, the timing of the appeal becomes irrelevant.

In *McClanahan*, the defendant entered plea agreements to several different indictments. 308 S.W.3d 694, 695-96 (Ky. 2010). Each of the agreements contained a "hammer clause," subjecting the defendant to a forty-year sentence if he failed to appear for sentencing or violated the terms of his pre-sentence release. *Id.* at 696. McClanahan did fail to appear for sentencing

---

[3] The Court of Appeals determined this was after the three-year limit under RCr 11.42. However, the plea for relief was brought in a combined RCr 11.42/CR 60.02 motion. Under CR 60.02, certain forms of relief may be requested "within a reasonable time." Because our holding relies on another case to determine Phon's sentence was unlawful, we do not reach the question of whether the five-year delay was "reasonable" under this Rule. However, had the timeliness of the appeal been an integral issue to our holding today, we would have been forced to hold that the five-year delay between our holding in *Shepherd* and Phon's latest appeal was not "reasonable" under CR 60.02, especially given his lack of cogent reason for waiting to appeal on this statutory basis. *See Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983) (holding no abuse of discretion in finding 5 years as "unreasonable" under CR 60.02); *Oller v. Commonwealth*, 292 S.W.3d 332, 332 (Ky. App. 2009) (holding a 16-year delay was unreasonable); *Graves v. Commonwealth*, 283 S.W.3d 252, 257 (Ky. App. 2009) (finding a 7-year delay without explanation was unreasonable).

28

and was subjected to the hammer clause; however, the judge discovered that all the charges in the agreements would have added to a thirty-five-year term and thus sentenced McClanahan to thirty-five years imprisonment. *Id.* at 697. However, the thirty-five-year sentence still violated the maximum sentencing guidelines in KRS 532.110. *Id.* at 699. "[T]he aggregate of the sentences to be imposed upon [McClanahan] could not lawfully exceed twenty years." *Id.*

"Whether recommended by an errant jury or by the parties through a plea agreement, a sentence that is outside the limits established by the statutes is still an illegal sentence." *Id.* at 701. Furthermore, an illegal sentence cannot stand uncorrected. "Because it is the trial judge, and not the jury or the prosecutor or the defendant, that actually imposes a sentence by signing his or her name to the final judgment, it is to the judiciary that the legislative commandments of KRS 532.080(6)(b) and KRS 532.110(1)(c) are directed." *Id.* The fact that McClanahan agreed to an illegal sentence did not matter. "A sentence that lies outside the statutory limits is an illegal sentence, and the imposition of an illegal sentence is inherently an abuse of discretion." *Id.* "Our courts must not be complicit in the violation of the public policy embedded in our sentencing statutes by turning a blind eye to an unlawful sentence, regardless of a defendant's consent." *Id.* Because the plea agreement violated the law, "it [was] a contract which our courts may not enforce." *Id.* Further, "an appellate court is not bound to affirm an illegal sentence just because the issue of the illegality was not presented to the trial

29

court." *Spicer v. Commonwealth*, 442 S.W.3d 26, 35 (Ky. 2014) (quoting *Jones v. Commonwealth*, 382 S.W.3d 22, 27 (Ky. 2011)).

The situation before us in Phon's case is somewhat more nuanced. Phon was facing the death penalty. His counsel specifically requested the inclusion of LWOP as a sentence, with Phon's consent. However, under *McClanahan*, this Court cannot condone an illegal sentence "regardless of a defendant's consent." Our holding upon certification was limited to those cases where a defendant gave "unqualified consent." *Phon*, 17 S.W.3d at 108. This case cannot be an "unqualified consent" as, under *McClanahan*, a defendant's consent to an unlawful sentence is irrelevant. Unfortunately, that has only become clear upon our rulings in *Shepherd* and *McClanahan*; Phon was requesting an unlawful sentence and could not give an "unqualified consent" to such an illegal judgment.

What matters here is the judiciary's involvement. This Court cannot go beyond the limits that the legislature has placed upon the judicial branch. Part of this conscription of power is why, even when the issue of illegal sentence is *not* presented to the trial court, this Court is constrained from affirming a sentence found to be contrary to legislative boundaries. This limitation stems from the separation of powers doctrine. "Sections 27 and 28 of the Kentucky Constitution explicitly require separation of powers between the branches of government[.]" *Prater v. Commonwealth*, 82 S.W.3d 898, 901 (Ky. 2002). "[T]his Court has described Sections 27 and 28 as embodying the 'cardinal principle of our republican form of government' and one that is among

30

the most 'emphatically cherished and guarded' principles in our Constitution."
*Id.* (quoting *Bloemer v. Turner,* 137 S.W.2d 387, 390 (Ky. 1940) and *Arnett v.
Meredith,* 121 S.W.2d 36, 38 (Ky. 1938)).

"[A] constitutional violation of separation of powers occurs when, and
only when, one branch of government exercises power properly belonging to
another branch." *Prater,* 82 S.W.3d at 907. In *Prater,* the Court determined
that a statute allowing the judicial branch to grant parole was violation of this
principle, by allowing the judiciary to engage in a "purely executive function[.]"
*Id.* at 909.

Determining what should be a crime and setting punishments for such
crimes is a legislative function. "[T]he legislature makes the laws, deciding
what is a crime and the amount of punishment to impose for violations
thereof." *Jones v. Commonwealth,* 319 S.W.3d 295, 299 (Ky. 2010) (citing
*Wilfong v. Commonwealth,* 175 S.W.3d 84, 92 (Ky. App. 2004)). "Simply
enough, the task of setting a punishment for a given crime is a legislative
function." *Ratliff v. Commonwealth,* 719 S.W.2d 445, 448 (Ky. 1986) (overruled
on other grounds by *Commonwealth v. Ramsey,* 920 S.W.2d 526 (Ky. 1996)).
In contrast, "[t]he judiciary determines guilt and selects or implements a
sentence within the legislative range." *Jones,* 319 S.W.3d at 299 (citing
*Wilfong,* 175 S.W.3d at 92). This Court in *McClanahan* specifically held that
the trial court's imposition of a sentence in violation of legislative directive was
"a violation of the separation of powers doctrine embodied in Sections 27 and
28 of the Kentucky Constitution, and is an abuse of discretion." *McClanahan,*

31

308 S.W.3d at 698. "Under our Constitution, it is the legislative branch that by statute establishes the ranges of punishments for criminal conduct. It is error for a trial jury to disregard the sentencing limits established by the legislature, and no less erroneous for a trial judge to do so by the acceptance of a plea agreement that disregards those statutes." *Id.* at 701.

This separation of powers issue leads to this Court's conclusion that the defendant's timeliness in bringing the attack is immaterial. We are loathe to hold in this manner, for, as we have repeatedly stated, "a CR 60.02(f) motion must be made 'within a reasonable time.'". *Foley v. Commonwealth*, 425 S.W.3d 880, 884 (quoting CR 60.02 and *Gross*, 648 S.W.2d at 858). Although the focus for so many collateral attacks is the defendant's timely or untimely action, with an illegal sentence, the focus is instead on the judiciary's involvement. For this doctrinal reason, the timeliness issue is not one of rewarding a defendant for an appeal that is lacking in form or punctuality. Instead, it is about preventing the judiciary from overstepping its bounds and legislating through inaction or, in the trial court's case, action. When a trial court sentences a defendant outside lawful confines, it has overstepped into the arena of legislative action. When an appellate court chooses not to correct that unlawful order, even if it is not brought to the attention of the Court until many years later, it becomes complicit in that breach of the confines of the judiciary power.

The General Assembly has decided LWOP is an inappropriate sentence for juveniles. Under our ruling in *Shepherd*, this Court has acknowledged that

32

statutory directive. That legislative statement was the same at the time of Phon's sentence. Thus, to override the legislative directive and impose an unlawful sentence would violate the separation of powers doctrine. This the Court cannot do.

The question arises as to what is the effect of the original unlawful sentence and what must be done to correct it. While Kentucky law has not specifically or explicitly answered this question, most jurisdictions hold that an illegal sentence is void.[4] The United States Supreme Court, in an older decision, has implied that sentences imposed beyond that which is lawful are void:

---

[4] For example, in Tennessee, the courts distinguish between void and voidable sentences. Voidable sentences are "facially valid [requiring] proof beyond the face of the record or judgment to establish its invalidity." *Edwards v. State*, 269 S.W.3d 915, 920 (Tenn. 2008) (quoting *Summers v. State*, 212 S.W.3d 251, 256 (Tenn. 2007) (citing *Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn. 1998))). In contrast, a void sentence "is one which shows upon the face of the record a want of jurisdiction in the court assuming to render the judgment ... ." *Edwards*, 269 S.W.3d at 920 (quoting *Lynch v. State ex rel. Killebrew*, 166 S.W.2d 397, 398 (Tenn. 1942)). *See also Davis v. Riedman*, 114 N.W.2d 881, 884 (N.D. 1962) ("As a general rule, if the law prescribes a place of imprisonment, the court cannot direct a different place, and if it does so, the sentence is void ..."); *Kaiser v. State*, 646 S.E.2d 84, 87 (Ga. Ct. App. 2007) (quoting *Mullins v. State*, 214 S.E.2d 1, 1 (Ga. Ct. Ap. 1975) ("A sentence entered in a criminal case which is unauthorized by law is a nullity and void."); *Hart v. State*, 481 S.W.3d 679, 685 (Tex. Crim. App. 2015) (citations omitted) ("A sentence outside the range of punishment authorized by law is an illegal sentence ... which is void and must be reversed."); *State v. McBride*, 567 N.W.2d 136, 145 (Neb. 1997) ("A sentence imposed without a legal basis is void."); *Busby v. State*, 774 S.E.2d 717, 720 (Ga. Ct. App. 2015) (citations omitted) ("[A] judgment of sentence is void where it imposes an illegal sentence ... the illegality of such a judgment is not a waivable issue."); *U.S. v Ramey*, 503 F.Supp. 24, 25 (E.D. Tenn. 1980) (citations omitted) ("Being illegal, such sentence is void, and the Court has the power and the duty to expunge the void sentence and, at the appropriate time, pronounce a lawful sentence on such defendant."); *State v. Louisell*, 865 N.W.2d 590, 597 (Iowa 2015) (citing *State v. Ross*, 729 N.W.2d 806, 809 (Iowa 2007) and *State v. Freeman*, 705 N.W.2d 286, 287 (Iowa 2005)) ("[S]entences imposed without statutory authorization are illegal and void."); 21 Am. Jur. 2d Criminal Law § 735 ("An illegal sentence is generally considered void[.]").

> If a justice of the peace, having jurisdiction to fine for a misdemeanor, and with the party charged properly before him, should render a judgment that he be hung, it would simply be void. Why void? Because he had no power to render such a judgment. So, if a court of general jurisdiction should, on an indictment for libel, render a judgment of death, or confiscation of property, it would, for the same reason, be void. Or if on an indictment for treason the court should render a judgment of attaint, whereby the heirs of the criminal could not inherit his property, which should by the judgment of the court be confiscated to the State, it would be void as to the attainder, because in excess of the authority of the court, and forbidden by the Constitution.

*Ex parte Lange*, 85 U.S. 163, 176-77 (1873). "In other words, in a case where it had full jurisdiction to render one kind of judgment, operative upon the same property, it rendered one which included that which it had a right to render, and something more, and this excess was held simply void." *Id.* at 178.

We hold today that a sentence imposed beyond the limitations of the legislature as statutorily imposed is unlawful and void. This holding is narrow: only a sentence that is illegal and was illegal at the time it was imposed would fall within this holding. It is because these sentences are void and unlawful that CR 60.02 provides the proper remedy for relief. In *Meredith v. Commonwealth*, "the jury, without the court's instruction, added the words 'without parole' to the verdict upon which a judgment was entered sentencing him to life in the penitentiary 'without the benefit of parole.'" 312 S.W.2d 460, 462 (Ky. 1958). The appellant filed for relief from the entire judgment pursuant to CR 60.02. *See id.* at 461-62. This Court's predecessor court did determine that the addition of the "without privilege of parole" was erroneous as the instructions to the jury did not allow such an addition. *See id.* at 462.

34

However, the trial court recognized that error and struck the words "without benefit of parole" from the final judgment. *Id.* "The error did not invalidate the entire judgment as insisted by appellant. Execution of the remainder of the judgment not being dependent upon the execution of its erroneous provision, the court is authorized under CR 60.02 to give relief from the erroneous provision alone." *Id.* Although under *Winstead v. Commonwealth,* 327 S.W.3d 479 (Ky. 2010), CR 60.02 is unavailable for judicial errors, an unlawful sentence is not strictly a judicial error.

In *Winstead,* the Commonwealth moved the trial court, pursuant to CR 60.02, to amend the jail-time credit granted to Winstead. *Id.* at 482. The trial court, finding that allowing the time as he had originally done would violate statutory provisions, granted the Commonwealth the CR 60.02 relief and entered an amended judgment. *Id.* The Court of Appeals affirmed and this Court granted discretionary review. *Id.* at 483. The Court did explicitly hold that "the improper awarding of jail-time credit was undeniably a judicial error, and [] CR 60.02 is not an appropriate vehicle for the correction of judicial errors[.]" *Id.* However, this Court specifically delved into the issue of whether the improper jail-time credit was part of Winstead's *sentence. Id.* at 489-91. The Commonwealth had argued that because Winstead's sentence was illegal, the trial court could correct that sentence at any time. *Id.* at 489. The Court "reject[ed] this argument because the award of jail-time credit is not part of Winstead's sentence." *Id.* "Because we have already determined that jail-time credit is not part of a defendant's sentence, precedent holding that an illegal

35

sentence may be corrected 'at any time' is irrelevant because, as we discussed with the parties at oral argument, the jail-time credit award is not a part of Winstead's actual sentence." *Id.* at 490-91 (citing *Skiles v. Commonwealth*, 757 S.W.2d 212, 215 (Ky. 1988) and *Neace v. Commonwealth*, 978 S.W.2d 319, 322 (Ky. 1998)). Thus, the Court specifically differentiated between a judicial error and an illegal sentence, implying that the two errors would require different analyses and dispositions.

Additionally, there is a fine distinction between a plea for relief from a conviction and relief through remedy of a *sentence*. In a Kansas Supreme Court case, the Court clarified that correction of an illegal *sentence* is distinct and separate from a collateral attack on a *conviction*. *State v. Davis*, 156 P.3d 665, 667 (Kan. 2007) (quoting *State v. Nash*, 133 P.3d 836 (Kan. 2006)). Thus, even if CR 60.02 may not apply to judicial errors in attacking a *conviction*, this is separate and distinct. It is a limited attack on the illegality of a sentence and the remedy is not reversal of a conviction, but correction of a sentence. *See Davis*, 156 P.3d at 667 (quoting *Nash*, 133 P.3d 836) ("The relief available ... is correction of a sentence, rather than reversal of a conviction."); *see also Cantrell v. Easterling*, 346 S.W.3d 445, 458 (Tenn. 2011) ("His convictions are not infected by the sentencing error; rather, Defendant's four convictions for aggravated rape remain intact.").

It is logical that such illegal sentences are considered void and correctable at any time, as contrasted to an attack on the underlying conviction. If the sentence goes beyond the jurisdiction of the court imposing

36

it, then it must be considered a legal nullity. The Supreme Court in Tennessee has determined that "trial courts lack jurisdiction to impose sentences not available under the sentencing statutes governing the case." *Edwards*, 269 S.W.3d at 921. In such circumstances, the "sentences are illegal, amounting to 'jurisdictional defects' that render the judgments imposing them void[.]" *Id.* (internal citation omitted). Even a guilty plea cannot waive this particular error because it cannot "confer jurisdiction upon the trial court to impose a sentence not available under governing statutes." *Id.* (internal citations omitted). "[T]he modern doctrine or idea is that a court must possess jurisdiction not only of the person and subject-matter, but to impose the sentence which is adjudged. If the latter is lacking the sentence is not merely voidable but void." *State v. McBride*, 567 N.W.2d 136, 145 (Neb. 1997) (citations omitted). *See also State v. Payne*, 873 N.E.2d 306, 311 (Ohio 2007) (citations omitted) ("A void sentence is one that a court imposes despite lacking subject-matter jurisdiction or the authority to act.").

Kentucky, likewise, has held that sentencing errors implicitly infer jurisdictional defects. In *Wellman v. Commonwealth*, the Court determined that a sentence violated a statute. 694 S.W.2d 696, 698 (Ky. 1985). The Court held "that, despite the fact that the trial counsel failed to object at the time of the judgment's entry, since sentencing is jurisdictional it cannot be waived by failure to object." *Id.* The Court there affirmed the conviction but remanded to the trial court to comply with the relevant sentencing statute. *Id.* Even more recently, this Court stated that "[s]entencing is jurisdictional[.]" *Cummings v.*

37

*Commonwealth*, 226 S.W.3d 62, 66 (Ky. 2007). Therefore, "sentencing issues may be raised for the first time on appeal[.]" *Id.* Since these cases, this Court has further clarified these holdings to mean that appellate courts are not bound to affirm an illegal sentence. *See Jones*, 382 S.W.3d at 27. However, this Court has yet to explicitly refer to an unauthorized sentence being beyond the authority or jurisdiction of the trial court, as other state courts have done.

Despite this leaning, Kentucky's courts have implied that, even if an illegal sentence is void, it is void only as to the excess portion of the sentence. In *Department of Public Welfare of Kentucky v. Polsgrove*, the defendants in question alleged that they were sentenced beyond the maximum allowable sentence. 53 S.W.2d 341, 342 (Ky. 1932). The Court held that "[s]ound reasoning and the weight of authority support the rule that the whole sentence is not illegal and void but valid to the extent authorized by the statute." *Id.* (citing 16 C.J. § 3093, p. 1312). In holding such, the Court held that holding opposite, that the entire sentence is void, "would be a mischievous practice to permit convicts to escape punishment in that manner, and it would tend to defeat the purposes of orderly procedure." *Polsgrove*, 53 S.W.2d at 343. The Court determined it was "constrained to the conclusion that the judgment of conviction was valid to the extent authorized by the statute and voidable only as to the excess." *Id.* The United States Supreme Court's language in *Ex parte Lange* also supports the proposition that only the excess of the sentence is illegal and void. *See* 85 U.S. at 178 ("In other words, in a case where it had full jurisdiction to render one kind of judgment, operative upon the same property,

it rendered one which included that which it had a right to render, and something more, and this excess was held simply void.").

The voidness of this sentence also justifies why this Court must act, even though Phon's motion was not made in a timely or appropriate manner.[5] "While trial courts are afforded discretion to address what constitutes a reasonable time under CR 60.02 ... , the law is clear that void judgments are 'not entitled to any respect or deference by the courts.'" *Soileau v. Bowman*, 382 S.W.3d 888, 890 (Ky. App. 2012) (citing *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983) and quoting *Foremost Ins. Co. v. Whitaker*, 892 S.W.2d 607, 610 (Ky. App. 1995)). "A void judgment is a legal nullity, and a court has no discretion in determining whether it should be set aside." *Soileau*, 382 S.W.3d at 890 (quoting *Whitaker*, 892 S.W.2d at 610 (citation omitted)). "Under Section 763 of the Civil Code (see now CR 60.02) the lower court had authority to set aside the void portion of the judgment on motion, without limitation of time." *Engle v. City of Louisville*, 262 S.W.2d 371, 373 (Ky. 1953). "[A] void judgment is a legal nullity, and further, such a judgment does not acquire validity with the passage of time." *Grundy v. Commonwealth*, 400 S.W.3d 752, 755 (Ky. App. 2013) (citing *Rogers Group, Inc. v. Masterson*, 175 S.W.3d 630, 635 (Ky. App. 2005)). In *Grundy*, the Court held a revocation order void as it was entered after the period of probation had ended. *Grundy*,

---

[5] We would also note, "[t]he days when substantial justice must be sacrificed for the sake of blind adherence to strict technicalities long since outmoded have passed in this State and are, we hope, beyond recall." *State v. Culver*, 129 A.2d 715, 719 (N.J. 1957).

39

400 S.W.3d at 755. The CR 60.02 motion was filed almost eight years after the order. *Id.* at 754. The Court still held:

> Regardless of the amount of time that has passed from the date of Grundy's probation revocation order to the date that his motion to vacate was filed, it is clearly a miscarriage of justice for Grundy to be required to serve time under the probation revocation order where the trial court lacked jurisdiction to revoke Grundy's probation and where said order revoking probation was a nullity and otherwise of no force or effect as a matter of Kentucky law.

*Id.* at 755. Clearly, under Kentucky law, if the sentence was void, then no time limitations apply. A void judgment cannot gain validity simply because a defendant waits too long to attack the legality of the sentence.

*Montgomery v. Louisiana* was brought as a collateral attack, over fifty years after the original conviction. *See* __ U.S. __, 136 S.Ct. 718, 725-26 (2016). There, the state statutes provided a mechanism to file a motion to correct an illegal sentence. *Id.* at 726. An illegal sentence could be corrected at any time under the statute. *Id.* Additionally, this Court's language in *McClanahan* implies that the mode of attack or time when the attack is brought are immaterial when the issue is an *illegal* sentence. "[S]entences falling outside the permissible sentencing range *cannot stand uncorrected.*" *McClanahan*, 308 S.W.3d at 700 (emphasis added). "A sentence that lies outside the statutory limits is an illegal sentence, and the imposition of an illegal sentence is inherently an abuse of discretion." *Id.* at 701. "Our courts *must not* be complicit in the violation of the public policy embedded in our sentencing statutes by turning a blind eye to an unlawful sentence[.]" *Id.* (emphasis added). "It is the faithful adherence to the policies of justice

40

embodied in our sentencing statutes and rules that preserves the great respect and high regard most citizens of this Commonwealth have for our trial court judges." *Id.* at 704.

Illegal sentences must always be correctable. To hold otherwise would fly in the face of the separation of powers doctrine and grant the judiciary powers it was never intended to hold. Limiting the court's ability to correct an unlawful sentence would be counter to the policies inherent in the judiciary system.

As such, we must hold that Phon's LWOP sentence was illegal and, therefore, unenforceable. Therefore, we reverse the Court of Appeals and must remand to the circuit court for correction of the illegal sentence in light of this opinion.

## C. PHON'S CASE MUST BE REMANDED FOR CORRECTION.

We are sympathetic to the plight of the victims in this case. We recognize the trauma inflicted upon them in being forced to relive these events once more. However, this Court cannot be persuaded by passion but must impart justice as required by the laws of the Commonwealth. We cannot condone an illegal sentence and must, therefore, remand to the Warren Circuit Court for correction of the illegal sentence.

The trial court has inherent authority to correct an unlawful sentence, at any time. In *Skiles v. Commonwealth,* the Court cited with approval a Georgia case where the appellate court found that "the court's subsequent correction of the [unlawful sentence] was not only authorized but required." *Skiles,* 757

41

S.W.2d at 214 (quoting *Wallace v. State*, 333 S.E.2d 874, 876 (Ga. App. 1985)). In *Skiles*, this Court held that "[t]he rule that a trial court which has imposed an unlawful sentence can correct that sentence at any time appears to be the majority position in those jurisdictions which have considered the matter." *Skiles*, 757 S.W.2d at 215 (citing 28 A.L.R. 4th 147)). The Court held that "the rule [was] sound and [did] not offend any right of the defendant." *Skiles*, 757 S.W.2d at 215. In *Neace v. Commonwealth*, the Court also stated that "whether the unlawful sentence is recommended by the jury or an unlawful sentence is imposed following a guilty plea, the result is the same. In either instance, the sentence *must* be corrected to conform to the law." 978 S.W.2d 319, 322 (Ky. 1998) (emphasis added). Many other jurisdictions facing the issue before this Court today also refer to the ongoing authority of the trial court to correct an unlawful sentence.[6]

---

[6] *See People v. Coble*, 17 A.D.3d 1165, 1165 (N.Y. App. Div. 2005) ("Contrary to defendant's contention, [the court] had inherent power to resentence defendant in order to correct an illegal sentence that it had previously imposed.") (internal citations omitted); *Commonwealth v. Quinian*, 639 A.2d 1235, 1239 (Pa. Super. Ct. 1994) ("This inherent power of the court to correct obvious and patent mistakes is not eliminated by the expiration of the ... appeal period.") (internal citations omitted); *Cantrell v. Easterling*, 346 S.W.3d 445, 453 (Tenn. 2011) ("[A] trial court has the authority to correct an illegal sentence at any time."); *State v. Culver*, 129 A.2d 715, 721, 723 (N.J. 1957) ("Nor can it be said, apart from any statutory considerations, that our courts, according to present-day concepts and standards, are without power to correct an illegal or improper sentence."; "An even greater number of courts, however, have adopted the view that even an invalid or illegal sentence, which is beyond the power of the trial court to impose, may be corrected after the execution of the sentence has begun and without regard to the term of court at which it is done[.]").

In fact, one court determined that "[t]he authorities are unanimous in the view that a court may impose a valid sentence in substitution for one that is void, even though the execution of the void sentence has commenced." *State v. Fountaine*, 430 P.2d 235, 237 (Kan. 1967) (internal citations omitted). In that same case, the court cited to another state: "Here the error in the original proceeding consisted of imposing the wrong sentence for the crime charged. When that is the case the trial judge must

42

For these reasons, we find it well-grounded in case law, both within this jurisdiction and without, that the proper procedure is to remand this case back to the Warren Circuit Court to correct the unlawful sentence and impose a legal sentence. This procedure is not unheard of in Kentucky. In *Cummings*, the Court determined the sentence was above the maximum aggregate sentence applicable. 226 S.W.3d at 68. There, this Court stated that "[i]n other cases in which the statutory limit was exceeded, we remanded to the trial court for imposition of sentence which would fulfill the statutory maximum." *Id.* (citing *Gibbs v. Commonwealth*, 208 S.W.3d 848 (Ky. 2006) and *Young v. Commonwealth*, 968 S.W.2d 670 (Ky. 1998)). Thus, the Court determined it was "necessary for the trial court to fashion a new sentence which" did not violate the aggregate maximum sentence statute. *Cummings*, 226 S.W.3d at 68. In *Skiles* and *Neace*, this Court affirmed a trial court's modification of an unlawful sentence. *See Skiles*, 757 S.W.2d at 215 and *Neace*, 978 S.W.2d at 322. Therefore, this Court has a firm basis to remand the case back to the trial judge to *correct* the unlawful sentence and impose a sentence of LWOP 25.

Here, the jury made factual findings that the Commonwealth had proven the presence of aggravating factors to substantiate the imposition of LWOP 25,

---

change the sentence to correct the error and he must exercise his discretion anew in arriving at what he considers an appropriate sentence." *Id.* at 240 (quoting *State v. Froembling*, 391 P.2d 390, 391 (Or. 1964)). "The remedy for an illegal sentence is not dismissal of the proceedings ... Rather, the general rule is that if the original sentence is illegal, even though partially executed, the sentencing court may correct it." *Webb*, 281 S.W.3d at 277 (internal citations omitted) (Arkansas case). "[W]here a sentence is void ab initio, a trial court has both the jurisdiction and the obligation to vacate the sentence ... And a void sentence may be corrected at any time[.]" *Kaiser v. State*, 646 S.W.2d 84, 87 (Ga. Ct. App. 2007) (internal citations omitted).

LWOP, or capital punishment. There has been no error found that would undermine these factual findings. Thus, the legal aggravated sentences presented to the jury have been diminished to only one: LWOP 25.[7] Additionally, in *Polsgrove,* this Court's predecessor held that "the whole sentence is not illegal and void but valid to the extent authorized by statute." 53 S.W.2d at 342. Therefore, the sentence beyond the highest permissible remaining sentence, LWOP 25, is illegal and void. The trial court must now correct the sentencing error by imposing the highest remaining valid sentence: LWOP 25. As this Court stated in *Neace,* the "sentence must be corrected to conform to the law." 978 S.W.2d at 322. Such conformity with the law in this particular case is clear: the sentence of LWOP 25 must be imposed.

*Tinsley v. Commonwealth* provides this Court with further substantiation for our direction to the trial court. In that case, the death penalty imposed was found to be unconstitutional. *Tinsley v. Commonwealth,* 495 S.W.2d 776, 783 (Ky. 1973). This Court determined that it was left with "no alternative save to reduce the punishment to the only lower penalty authorized by KRS 435.010, which is life imprisonment." *Id.* Although Phon's situation is distinguishable as there were remaining permissible sentences that could have been imposed, the only remaining *aggravated* sentence that is permissible under the law here

---

[7] Under Kentucky's statutory sentencing scheme, a jury is not constrained from recommending one of the lesser sentences from a term of years to life imprisonment, even if it finds an aggravating factor present. However, the sentences that are added to the jury's options only upon the finding of an aggravator have been diminished to one in Phon's case: LWOP 25.

44

is LWOP 25. Thus, we remand this case back to the Warren Circuit Court to correct the illegal sentence by imposing a sentence of LWOP 25.

## IV. CONCLUSION

We take great care in reaching our decision today. This case is one of great import and we understand the need for finality for both the victims left behind and the defendant. Thus, we carefully measure our response and holding here today. We hold that LWOP for juveniles does not always offend the federal or Kentucky constitutions, so long as it comports with a discretionary scheme and the defendant has a meaningful opportunity for the jury to consider mitigating evidence. We hold that Phon's sentencing was constitutionally permissible. However, under our more recent rulings regarding penalties allowable under the juvenile code, we hold that Phon's sentence was statutorily prohibited. As such, we must remand for the trial court to impose the lawful sentence of LWOP 25.

Cunningham, Hughes, Keller, Venters and Wright, JJ., and Kline and Thacker, S.JJ., concur. Thacker, S.J. concurs by separate opinion, which Kline, S.J. joins. Minton, C.J. and VanMeter, J., not sitting.

THACKER, S.J., CONCURRING: This court's decision to remand for the trial court to correct the sentence in this case turns entirely upon the fact that the original sentence was outside the range authorized by statute, and therefore, void. I concur fully with that conclusion and with the principal opinion's thorough analysis of that issue.

45

Because of the posture in which this case came before us, we also address the constitutional claims raised by Phon. Hereto I agree with the result and with most of the principal opinion's learned analysis. I write separately, however, because I believe that the appropriate analysis of what constitutes a "cruel and unusual punishment" is much simpler than that suggested by current U.S. Supreme Court precedent.

While this court may feel compelled to apply the convoluted rationale of the current majority of the federal Supreme Court to cases where existing precedent is controlling,[8] in cases that are beyond existing precedent and when applying the Kentucky Constitution, this Court should exercise its own independent judgment as to what the law is. Whether or not this case falls within existing precedent requires us to analyze *Miller* and *Montgomery*, as the principal opinion very ably does.

However, when addressing the subsequent question of whether to extend the protections of either the Eighth Amendment or of Section 17 of the Kentucky Constitution, we need only decide whether the punishment at issue is prohibited by the constitutional texts as written and according to their

---

[8] In *Eubank v. Poston*, 5 T.B. Mon. 285, 21 Ky. 285, 294 (Ky. 1827), our predecessor court concluded that "[o]n the constitution and general laws of the whole nation, we subscribe to the supervising power of [the United States Supreme Court]", and therefore, "[d]ecisions of the Supreme Court are binding authority on questions of constitutional and general laws of the whole nation, but not on questions of municipal law." While this Court has adopted a deferential position with respect to the United States Supreme Court's precedent on federal constitutional matters, the constitutional footing for that assumption has been questioned. *See* Lee J. Strang, *State Court Judges Are Not Bound by Nonoriginalist Supreme Court Interpretations*, 11 FIU L. Rev. 327 (2016), *available at* http://ecollections.law.fiu.edu/lawreview/vol11/iss2/6.

original meaning. In this case, that means asking whether a sentence of life in prison without the possibility of parole for a 16-year-old who murdered a mother and father and attempted to murder their twelve-year-old-daughter involves methods of punishment that had been considered "cruel and unusual" in the United States in 1791 or in Kentucky in 1891.[9] Framed in this light, the constitutional issues raised by Phon are easily dispensed with.

To instead follow the current majority of the U.S. Supreme Court in presuming to discern and apply "evolving standards of decency" or "a moral consensus" in cases such as this is, in my view, a mistake—regardless of the result. Ultimately, that path presupposes that the U.S. Supreme Court may legitimately act as "the authoritative conscience of the Nation."[10]

I do not believe that this is the view of the majority in this case. To the contrary, in holding that Kentucky courts have no power to impose any sentence outside the range provided for by the General Assembly, the principal opinion clearly and correctly states that "[d]etermining what should be a crime

---

[9] *See, e.g., Graham v. Florida*, 560 U.S. 48, 99 (2010) (THOMAS, J., dissenting) ("It is by now well established that the Cruel and Unusual Punishments Clause was originally understood as prohibiting torturous *'methods* of punishment,'—specifically methods akin to those that had been considered cruel and unusual at the time the Bill of Rights was adopted[.]" (internal citations omitted).

[10] *Roper v. Simmons*, 543 U.S. 551, 616 (SCALIA, J, dissenting) ("If the Eighth Amendment set forth an ordinary rule of law, it would indeed be the role of this Court to say what the law is. But the Court having pronounced that the Eighth Amendment is an ever-changing reflection of 'the evolving standards of decency' of our society, it makes no sense for the Justices then to *prescribe* those standards rather than discern them from the practices of our people. On the evolving-standards hypothesis, the only legitimate function of this Court is to identify a moral consensus of the American people. By what conceivable warrant can nine lawyers presume to be the authoritative conscience of the Nation?").

and setting punishments for such crimes is a legislative function."[11] To give any credence to the "evolving decency" standard when carrying out this Court's independent constitutional analysis undermines the otherwise strong commitment to judicial restraint and respect for the separation of powers doctrine that is central to our unanimous resolution of this case by remanding for imposition of a statutorily authorized sentence.

---

[11] Principal Opinion, p. 31.

COUNSEL FOR APPELLANT:

Timothy G. Arnold
Department of Public Advocacy

Renee Sara VandenWallBake
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jason Bradley Moore
Assistant Attorney General

Susan Roncarti Lenz
Assistant Attorney General


COUNSEL FOR AMICI CURIAE, THE INSTITUTE FOR COMPASSION IN JUSTICE AND THE FAIR PUNISHMENT PROJECT:

Rebecca Ballard DiLoreto