# Alford v. Hines, et al.

(Decided October 5, 1920.)

## Appeal from Franklin Circuit Court.

Prisons—Commutation of Sentence—When Prisoner Not Entitled to Parole.—A prisoner convicted in 1910 under the indeterminate sentence law then in force, and sentenced to serve a term of not less than ten nor more than twenty years in the penitentiary, and whose punishment is commuted by the Governor to eight to twenty years, after serving eight years is not entitled to a parole because under the parole act he must serve the minimum term provided by law for the crime for which he is convicted before he is eligible to parole, and he can not by mandamus require the board of charities and correction to grant him a parole.

J. B. ADAMSON and GUY BRIGGS for appellant.

CHARLES I. DAWSON, Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Can one convicted of a crime, the punishment of which is fixed by statute at not less than ten nor more than twenty years confinement in the state penitentiary, by mandamus compel the board of charities and corrections for the state of Kentucky to grant him a parole after he has served eight years, even though the Governor has in the way appointed by law commuted the minimum sentence of the prisoner to eight years?

That is the exact question presented by this appeal.

Clarence Alford was convicted in the Marion circuit court in February, 1912, of the crime of rape and under the indeterminate sentence law, then in force, sentenced by the Marion circuit court to serve a term of not less than ten nor more than twenty years in the penitentiary at Frankfort. Very shortly after receiving the sentence Alford was transferred to the penitentiary at Frankfort and began to serve his term. In March, 1920, the Governor commuted the sentence of Alford to from eight to twenty years; thereupon Alford applied to the board empowered to grant paroles for a parole; filed his petition and showed that he had not been guilty of infraction of the rules or regulations of the penitentiary and that he had secured respectable employment with a responsible person with a promise of sufficient compensation to render him self sustaining. His petition for parole was overruled and the parole refused by the board.

Alford thereupon brought this action in the Franklin circuit court against the members of the board of charities and corrections of the state of Kentucky, praying that "they and each of them" be required by mandamus to grant the plaintiff a parole and to release him from the state penitentiary at Frankfort. To this petition a general demurrer was filed by the board through the attorney general and upon hearing was sustained by the trial court and the plaintiff declining to plead further the petition was dismissed and Alford appeals.

It is the contention of appellant Alford that the commutation by the Governor was a limited pardon and mitigated the punishment inflicted upon appellant to the extent of making the minimum term of the prisoner eight years instead of ten, and rendered him eligible for parole at the expiration of eight years, the time fixed in the commutation, instead of ten years, the time fixed in the judgment of the court, under section 1154, Kentucky Statutes. That statute reads:

"Whoever shall unlawfully carnally know a female of and above twelve years of age, against her will or consent, or by force, or whilst she is insensible, shall be guilty of rape, and punished by confinement in the penitentiary not less than ten nor more than twenty years or by death, in the discretion of the jury."

The minimum term of one convicted of the crime of rape under the foregoing statute is ten years. Under the parole act of 1910 as well as all subsequent parole acts of our legislature, no one is eligible to parole until he has served the minimum term of imprisonment provided by law for the crime for which he is convicted. That statute in so far as it affects this case reads:

"No person so confined shall be eligible to parole or entitled to the provisions of this act until he shall have served the minimum term of imprisonment provided by law for the crime for which he was so committed."

The crime for which Alford was committed to the penitentiary has a minimum term penalty of ten years, and since Alford has served only eight years it is manifest that he was not eligible to parole at the time he instituted this action, unless the commutation granted by the Governor operated to change the minimum term fixed by the statutes from ten years to eight years, set forth in the commutation. This we do not conceive can be done. The Governor had power to commute the sentence or to pardon Alford altogether, but he had and has no power to change the statute, section 1154, so as to in

effect make it read, "punished by confinement in the penitentiary for not less than eight nor more than twenty years, or by death." Since the Governor can not, by pardon or commutation, change the statute, the eligibility of a prisoner to parole convicted under the statutes is not effected and is not perfected because it is not made to depend upon the time to which his sentence may be commuted but entirely and wholly upon the term of imprisonment provided by law for the crime for which he was committed, and as the minimum term in this case was ten years it would not have aided appellant had the Governor commuted his sentence to five years or any other number of years less than ten, because the statute does not make him eligible for parole until he has served the minimum term provided by law for a conviction in such case.

In the case of Rogers v. Board of Prison Commissioners, 161 Ky. 612, we held that a prisoner convicted under the indeterminate sentence law of 1910 must serve the minimum term of imprisonment fixed by law for the crime for which he is convicted before he is eligible to parole. In that case Rogers was sentenced for a term of not less than two nor more than ten years, and when he had served about one year and nine months and was entitled to good time for his good behavior as a prisoner, which would have reduced the two years to about one year and nine months, he instituted his action to obtain a mandamus against the board of prison commissioners to require them to grant him a parole on the ground he had served the minimum term, allowing him for good time. In that case we said:

"But the parole act of 1910 specifically says that 'no person shall be eligible to parole or entitled to the provisions of this act until he shall have served the minimum term of imprisonment provided by law for the crime for which he was so committed.'

"If it was the legislative intent that there should be deducted from the minimum term provided by law the commutation allowed to persons convicted before the passage of this act, we should expect to find such intent definitely expressed therein. The legislature has not seen fit to make such provision.

"The provisions of section 3801, Kentucky Statutes, had no relation to paroles at the time of the enactment thereof. The statute affected prisoners who were not paroled, by reducing the term of imprisonment for good behavior. It was not a part of chapter 97, Kentucky

Statutes, 1909, which was repealed by the parole act of 1910, for the reason that it had no relation to paroles. And while not expressly repealed by the parole act of 1910, it does not affect the right of persons convicted under the indeterminate sentence law while the parole act of 1910 was in effect.

"Appellant was sentenced for a minimum term of two years and is not entitled to a parole before the expiration of that time."

Rogers was not entitled to the parole although with his allowance for good time he had served a term equivalent to two years, because the statute did not make him eligible to parole until he had served the minimum term of imprisonment provided by law for the crime for which he was committed. He was much in the same situation as is Alford in this case, but neither of them was eligible to parole at the time of the commencement of their actions, and the lower court did not err in sustaining the demurrer of the board of charities and corrections to the petition of Alford and in dismissing his action.

Judgment affirmed. Chief Justice Carroll dissenting.

## DISSENTING OPINION BY CHIEF JUSTICE CARROLL.

There is involved in this case an important public question, and, finding myself unable to agree with my associates in the conclusion reached in the opinion, I have thought it well to state the reasons that have influenced me to dissent.

The facts are correctly set out in the opinion, and it will be seen that the court holds that as the statute under which Alford was convicted provided that the punishment for the offense should be confinement in the penitentiary for not less than ten nor more than twenty years, and as the judgment of the trial court pursuant to the verdict of the jury fixed the sentence at confinement in the state penitentiary for not less than ten nor more than twenty years, Alford, although his minimum sentence was commuted by the Governor to eight years, was not eligible to parole because the parole statute provides that no person shall be eligible to parole "until he shall have served the minimum term of imprisonment provided by law for the crime for which he was so committed."

In the course of the opinion the court said:

"The Governor had power to commute the sentence of Alford altogether, but he had and has no power to

change the statute so as in effect to make it read 'punished by confinement in the penitentiary for not less than eight nor more than twenty years, or by death.' Since the Governor can not, by pardon or commutation, change the statute, the eligibility of a prisoner to parole convicted under the statutes is not affected and is not to be perfected because it is not made to depend upon the time to which his sentence may be commuted but entirely and wholly upon the term of imprisonment provided by law for the crime for which he was committed, and, as the minimum term in this case was ten years, it would not have aided appellant had the Governor commuted his sentence to five years or any other number of years less than ten, because the statute does not make him eligible for parole until he has served the minimum term provided by law.''

It will be seen that if Alford had served the minimum term of imprisonment of ten years he would be entitled to parole as a matter of right, and so if the statute had fixed the minimum punishment at a term of eight years he would be entitled to a parole as a matter of right, because it is not questioned that he had observed all the prison rules and regulations.

And he is denied the parole solely upon the ground that his minimum term of ten years fixed by the statute and the judgment of the court had not expired. In other words, the court gives no effect whatever to the commutation of the sentence by the Governor from ten to eight years.

In thus ruling I think the court has placed an unwarranted limitation upon the power of the Governor, and has in fact said that the clemency extended was a nullity. I am authorized to say that the court treated the act of clemency as a nullity, because if it did not have the effect of reducing the minimum sentence so as to entitle Alford to parole it did not have any meaning or effect whatever, as Alford, notwithstanding the commutation of his sentence by the Governor to eight years, must remain in prison for ten years.

The only purpose of the Governor in granting the commutation was to entitle Alford to parole when eight years of his imprisonment had expired, and if the commutation is denied this effect I repeat that the act of the Governor had no meaning or effect and the pardon no more weight than a blank piece of paper.

Now, the question is, should or can the court nullify the pardoning power of the Governor? The Constitution

provides in section 77 that "he shall have the power to remit fines, forfeitures, commute sentences, grant reprieves and pardons," and the unrestrained exercise of the power so conferred has not heretofore been questioned by any court, so far as an extended investigation of the subject enables me to speak. Nor has any court heretofore assumed to destroy the purpose of a valid pardon by denying the effect intended to be accomplished by the act of clemency.

The exercise of this great power has been confided to the Governor by the Constitution, and it is not within the competency of either court or legislature or any body or department to interfere with its disposal.

As said in 20 R. C. L., p. 533:

"An executive may grant a pardon, for good reasons or bad, or for any reason at all, and his act is final and irrevocable. Even for the grossest abuse of this discretionary power the law affords no remedy; with the reasons which actuated the executive the courts have no concern. The Constitution clothes him with the power to grant pardons, and this power is beyond the control, or even the legitimate criticism, of the judiciary. Whatever may have been the reasons for granting the pardon the courts cannot decline to give it effect if it be valid upon its face, and no court has the power to review the action of the executive in granting a pardon, for that would be the exercise of the pardoning power in part, and any attempt of the courts to interfere with the Governor in the exercise of the pardoning power would be manifest usurpation of authority, no matter how flagrant the breach of duty upon the part of the executive."

And this statement of the law is supported by all the authorities without any dissent or conflict.

Now it must be manifest that if a court can disregard or nullify in any respect the beneficial effect intended to be and that was conferred by the pardon, it necessarily follows that the power of the Governor becomes subject to the supervision and control of the courts, and this would be an unheard of and unprecedented invasion of the executive authority by the judiciary.

But this is exactly what the court has done in this case, when it puts its decision upon what I conceive to be the wholly untenable ground that the Governor has no power to substitute for the statute or the judgment of the court, or both, his own will as expressed in an act of executive clemency.

The opinion of this court in Rogers v. Board of Prison Commissioners is relied on to sustain the conclusion reached by the court, but I submit that that case has no application here.

In the Rogers case the only question was whether a parole board created by statute with limited powers could give a convict credit by his "good time" in determining whether he had served the minimum term that would entitle him to a parole. The court in denying the power said that the provisions of section 3801 of the Kentucky Statutes allowing convicts a credit or commutation of seven days in each month had no relation to paroles, thus making it plain that the court was controlled by the statute. But here we are dealing not with the limited powers of a statutory board but with the unlimited power of a constitutional officer confided to him by the Constitution.

If the Governor, in place of reducing the "minimum sentence" to eight years, had simply reduced the sentence imposed by the judgment to eight years, plainly Alford would have been entitled to his discharge from prison when the eight years had expired, although the statute provided and the judgment declared that he must remain in prison not less than ten nor more than twenty years.

Now, if the absolute pardon of the Governor would have this effect, how can it be said the commutation of the sentence to eight years did not have the effect of placing Alford in the same attitude that he would have been if the statute and the judgment had fixed his minimum sentence at eight years? How can it be said that when the Governor can in effect render the statute and the judgment inoperative in one case he cannot do it in the other? How can it be said that he can release entirely the prisoner and yet not reduce the sentence so that the parole law may become applicable sooner than it would under the terms of the statute?

In one case as well as the other the pardon of the Governor takes the place of the statute and the judgment and the rights of the convict are to be ascertained and determined from an inspection of the pardon and not from a reading of the statute or judgment.

In other words, if the Governor had granted an absolute pardon to Alford this pardon would have set aside and rendered inoperative in part the statute and the judgment under which Alford was sentenced, and so if he had reduced by commutation or conditional pardon the sentence of the court imposed under and by virtue of

the statute his will as expressed in the act of clemency would have been substituted for the statute and the judgment so far as Alford was concerned. Such is the inevitable effect of every act of clemency after there has been a judgment of conviction.

Keeping in mind this inevitable result of every act of clemency it seems very plain that when the Governor commuted the minimum term of Alford to eight years he thereby substituted, as he had the right and power to do with the consent of Alford, his judgment and discretion in place of the statute and the judgment of the court, and the effect of this substitution was the same as if the statute and the judgment of the court had fixed the minimum term or sentence at eight years in place of ten years.

In support of these views I call attention to the opinion of the Supreme Court of Minnesota, in State v. Wolfer, 127 Minn. 102, L. R. A. 1915B, p. 95, in which the court said: "It is well settled that a commutation of a sentence is the substitution of a less for a greater punishment. After commutation the commuted sentence is the only one in existence and the only one to be considered. After commutation the sentence has the same legal effect, and the status of the prisoner is the same as though the sentence had originally been for the commuted term."

In Duehey v. Thompson, 223 Federal Rep. 305, the Circuit Court of Appeals of the United States for the 9th district had before it a question very similar to the one appearing in this record. In December, 1911, Thompson was convicted in a court of the United States on two counts and sentenced for a term of four years upon each count, the terms of service to run consecutively. In August, 1913, the President of the United States commuted the sentence to make the service on the two four year terms run concurrently, and thereby reduced the term of service from eight to four years. Under a statute of the United States very much like our parole statute it was provided that when a prisoner had served one-third of the term for which he was sentenced he was entitled to be released on parole.

After the sentence of Thompson had been commuted and after he had served one-third of the four-year term he made application to the board of parole for release. The board declined to grant the parole because Thompson had not served one-third of the time of his original sentence of eight years. Thereupon he brought suit for

a writ of mandamus requiring the parole board to entertain his petition, and the writ having been granted by the judgment and decree of the district court the parole board prosecuted an appeal to the circuit court of appeals.

In affirming the judgment of the lower court and holding Thompson entitled to a parole the court said: "The single question presented for decision is whether the commutation of the sentence by the President reduces the judgment of the court as a judgment, that is, casts a new sentence respecting which the judgment attaches, so that the commuted sentence stands yet as the judgment of the court, or whether it supersedes or displaces the judgment of conviction in such a way that it no longer remains the sentence or judgment of the court but becomes the commuted sentence of the President. The mere statement is its own solution. . . . The judgment of conviction must be the basis upon which all pardons and commutations can be grounded, for if there be no judgment and sentence there can be no pardon or commutation. If there be a full pardon the judgment is satisfied and ceases to have operation. If there be a commutation only the judgment is only satisfied in part and remains operative in part, and it requires the exercise of the function of the court in order that the commuted judgment may be executed. The President does not execute it nor prescribe the process whereby it shall be satisfied. That is left to the judicial department of the government and is controlled and regulated by the laws respecting the enforcement of judgments of conviction in criminal cases. So it must be that the judgment remains, but in modified form—a modification imposed upon it by the executive power—and can partake in no sense of a sentence imposed by the President. The effect is the same as that of a parole imposed by a legally constituted board of parole; it impressed itself upon the judgment but enforcement still remains with the court. Hence the judgment is still the judgment of the court until satisfied, through its warrant and commitment. In short, the executive has superimposed its mind upon the judgment of the court, but the sentence remains, nevertheless, the judgment of the court and not of the executive, and is subject to the regulation of law respecting its enforcement.

"It follows, therefore, that the defendant in error was entitled to his application for parole when he had served one-third of his commuted sentence of four years."

Although not mentioned in the opinion it might be thought that the power of the Governor to commute a sentence must be exercised within the limits prescribed by law as a punishment for the offense, and that the power to commute does not give the Governor the right to reduce a sentence below the minimum sentence fixed by the statute. And therefore if the Governor undertakes by an act of clemency to commute or reduce the sentence to a punishment not found in the statute his commutation being unauthorized may be disregarded or treated as a nullity.

In Bouvier's Law Dictionary, volume 1, p. 571, the word "commutation" is defined to be "a change of a punishment to which a person has been condemned into a less severe one;" in Mullen v. United States, 212 U. S. 516, 53 Law Ed. 632, the Supreme Court of the United States said: "It may be conceded that there is a technical difference between the commutation of a sentence and the mitigation thereof. The first is a change of a punishment to which a person has been condemned into one less severe, substituting the less for a greater punishment by authority of law. To mitigate a sentence is to reduce or lessen the amount of the penalty or punishment." To the same effect are Rich v. Chamberlain, 107 Mich. 381; Lee v. Murphy, 22 Gratt. (Va.) 789, 12 Am. Rep. 563; People v. Frost, 117 N. Y. Supp. 524, 29 Cyc. 1561.

But, assuming that the commutation of a sentence is technically the reduction of the sentence to a less one authorized by law, or one that might have been imposed under the statute, it does not follow that the commutation by the Governor will not be given any effect merely because it reduces the sentence imposed by the court and authorized by the statute to a term lower than the minimum fixed by law.

Pardons are to be construed according to the rules of construction applicable to deeds and other instruments, and so the intention of the executive will be carried out when this intention is expressed in a pardon which has been accepted by the beneficiary. As said in 20 R. C. L., page 547:

"The object of the court in construing instruments of this character is to carry out the intention of the parties, and wherever that is doubtful the grant is interpreted most beneficially for the citizen or subject and most strongly against the King. This is a universal rule in the interpretation of pardons. And as a pardon is an

act of grace, limitations upon its operation should be strictly construed. It is well settled that no technical words or terms are necessary to constitute a pardon, so long as the instrument is in effect a pardon."

So that, construing this pardon to carry out the manifest intention of the executive as expressed in the instrument, the technical meaning of the word "commutation" may be disregarded and the act of clemency treated as a conditional pardon, it being everywhere agreed that a conditional pardon that does not impose an illegal or immoral condition or one impossible of performance may be granted and become effective when accepted by the grantee, although it may subject him to a punishment that could not have been inflicted for the offense for which he was convicted. Supporting this rule is the case of ex parte Wells, 18 How. 307, 15 L. Ed. 421. In that case Wells was sentenced to be hanged and the President of the United States commuted the sentence of death to imprisonment for life, a punishment not authorized by the statute under which the conviction was had, and this commutation was accepted by Wells. It was contended by Wells on a writ of *habeas corpus* that the pardon was valid and the commutation void, and therefore he was entitled to be released; but the court said that the new punishment "when accepted by the convict is a substitution by himself of a lesser punishment than the law has imposed upon him, and he cannot complain if the law executes the choice he has made."

In Lee v. Murphy, 22 Gratt (Va.), 789, 12 Am. Rep. 563, it appears that Murphy was sentenced to imprisonment in the penitentiary for a term of three years and the Governor of the state commuted the punishment into imprisonment in the city jail of Richmond for a term of twelve months, which was a punishment that could not have been imposed under the statute for the offense of which he was found guilty. Murphy accepted the commutation and after he had been committed to the jail sought to secure his release under a writ of *habeas corpus*. The court, in denying his petition, said—and this is in harmony with the law everywhere—that the power to pardon included the power to grant a conditional pardon, and further said that a conditional pardon could not become effective until it had been accepted by the beneficiary.

It further said:

"Now it is true that this paper does not purport to be a pardon of any sort but a mere commutation of pun-

ishment. But the question recurs whether the acceptance by the convict of the terms imposed by the executive does not give to the warrant the operation and effect of a conditional pardon. Clearly the original punishment is remitted and a milder sentence is substituted. It is true this could not be done without the consent of the convict. It is equally clear that with his consent it might be done. Commutation is simply the substitution of a less for a greater penalty or punishment. If followed by acceptance by the convict it practically amounts to the same thing as a conditional pardon.''

In ex parte Harlan, 180 Fed Rep. 119, the court said: ''The constitutional prerogative of the President, to grant reprieves and pardons, includes the power to commute punishments. A common exercise of the power is where without changing the mode of punishment less of that kind of punishment is exacted and substituted for the greater punishment of the same kind required by the original sentence. Here the punishment fixed was imprisonment in the penitentiary for a certain time, and it is changed to imprisonment there for a less time. The original sentence to the penitentiary being lawful, and the President having the power to shorten the length of imprisonment without otherwise interfering with it, the execution of the commuted sentence in the penitentiary cannot be unlawful merely because the statutes do not authorize the courts in fixing the punishment in the first instance to inflict imprisonment in the penitentiary for so short a time.''

I think the judgment should be reversed with directions to issue the writ prayed for.