RENDERED: OCTOBER 15, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0764-MR

KEVIN NIGEL STANFORD                                        APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 82-CR-000406-001

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND McNEILL, JUDGES.

McNEILL, JUDGE: The appellant, Kevin Nigel Stanford (Stanford), was

convicted by a Jefferson County jury in 1982 of murder, sodomy, first-degree

robbery, and receipt of stolen property valued in excess of $100. He was

sentenced to a total of forty-five years in prison for the robbery, sodomy, and theft

convictions. Stanford was sentenced to death for the murder conviction. He was

seventeen years, four months old at the time he committed the underlying crimes.

In 2003, Stanford's sentence was commuted by Governor Paul Patton to life

without the possibility of parole (LWOP).  The present case concerns the trial court's denial of Stanford's most recent post-conviction motions for relief pursuant to RCr[1] 11.42 and CR[2] 60.02.  For the following reasons, we affirm the trial court. In so holding, we are cognizant of the ever-shifting sea of Eighth Amendment[3] jurisprudence and its practical impact on courts, victims and their families, and the criminally accused or convicted.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In affirming Stanford's conviction on appeal, the Kentucky Supreme Court summarized the facts of the underlying crimes as follows:

> On the evening of January 7, 1981, Baerbel Poore was repeatedly raped and sodomized during and after the commission of a robbery at the Checker gasoline station on Cane Run Road in southwestern Jefferson County where she was employed as an attendant.  The proceeds of the robbery consisted of approximately 300 cartons of cigarettes, two gallons of fuel and a small amount of cash.  Following the robbery Ms. Poore was taken from the station and driven a short distance to an isolated area where she was shot twice, once in the face and once, fatally, in the head.

---

[1]  Kentucky Rules of Criminal Procedure.

[2]  Kentucky Rules of Civil Procedure.

[3]  U.S. CONST. amend. VIII, *made applicable to the states through* amend. XIV.  *See Robinson v. California*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962).

*Stanford v. Commonwealth*, 734 S.W.2d 781, 783 (Ky. 1987) (*Stanford I*), *aff'd sub nom. Stanford v. Kentucky*, 492 U.S. 361, 109 S. Ct. 2969, 106 L. Ed. 306 (1989) (*Stanford II*).

Thereafter, Stanford unsuccessfully sought post-conviction relief.[4] In 2005, the United States Supreme Court abrogated *Stanford v. Kentucky* and held that that application of the death penalty to juvenile offenders was unconstitutional. *See Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). In *Graham v. Florida*, the Court held that the Eighth Amendment prohibits the imposition of life without parole sentences for juvenile offenders who did not commit homicide. 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). In 2012, the Court prohibited the imposition of mandatory LWOP sentences for juveniles. *See Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Thereafter, the Court held that *Miller* shall be retroactively applied and attempted to clarify *Miller*'s holding. *See Montgomery v. Louisiana*, 577 U.S. 190, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016).

While the present case was pending on appeal and after it had been briefed by the parties and submitted to this Court for a decision, the United States

---

[4] *Stanford v. Commonwealth*, 854 S.W.2d 742 (Ky. 1993) (motion under RCr 11.42) (*Stanford III*), *cert. denied*, 510 U.S. 1049, 114 S. Ct. 703, 126 L. Ed. 2d 669 (1994); *Stanford v. Parker*, 266 F.3d 442 (6th Cir. 2001) (*Stanford IV*) (petition for federal habeas corpus), *cert. denied*, 537 U.S. 831, 123 S. Ct. 136, 154 L. Ed. 2d 47 (2002); and *Stanford v. Commonwealth*, 248 S.W.3d 579 (Ky. App. 2007) (*Stanford V*).

Supreme Court further clarified *Miller* and *Montgomery* in *Jones v. Mississippi*, ___ U.S. ___, 141 S. Ct. 1307, 209 L. Ed. 2d 390 (2021). Therein, the Court reiterated that "an individual who commits a homicide when he or she is under 18 may be sentenced to life without parole, but only if the sentence is not mandatory and the sentencer therefore has discretion to impose a lesser punishment." *Id*. at 1311. The Court further observed that "because youth matters, *Miller* held that a sentencer must have discretion to consider youth before imposing a life-without-parole sentence, just as a capital sentencer must have discretion to consider other mitigating factors before imposing a death sentence." *Id*. at 1316. However, "the Court has *never* required an on-the-record sentencing explanation or an implicit finding regarding those mitigating circumstances." *Id*. at 1320 (emphasis in original). Moreover, "a separate factual finding of permanent incorrigibility is not required before a sentencer imposes a life-without-parole sentence on a murderer under 18." *Id*. at 1318-19. Lastly, "[t]he Court's precedents do not require an on-the-record sentencing explanation with an *implicit* finding of permanent incorrigibility." *Id*. at 1321 (emphasis added).

## II.     STANDARDS OF REVIEW

We review a trial court's decision whether to grant relief pursuant to CR 60.02 or RCr 11.42 for an abuse of discretion. *Brown v. Commonwealth*, 932 S.W.2d 359, 362 (Ky. 1996); and *Teague v. Commonwealth*, 428 S.W.3d 630, 633

(Ky. App. 2014). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Foley v. Commonwealth*, 425 S.W.3d 880, 886 (Ky. 2014) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). However, we apply a *de novo* standard of review to issues of constitutionality and statutory interpretation. *Cumberland Valley Contractors, Inc. v. Bell Cty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007); *Phon v. Commonwealth*, 545 S.W.3d 284, 290 (Ky. 2018). With these standards in mind, we turn to the applicable law and the facts of the present case.

## III.   ANALYSIS

Appellant raises two arguments on appeal:  1) Stanford is entitled to resentencing because Section 77 of the Kentucky Constitution does not authorize the Governor to impose a sentence greater than the maximum sentence authorized by the legislature; and 2) Stanford's LWOP sentence is constitutionally excessive under recent case law. For the following reasons, we disagree.

**1.    Stanford's commutation sentence of LWOP did not violate Section 77 of the Kentucky Constitution.**

LWOP was not a statutorily authorized sentence for a capital offense in 1981 when Stanford committed the underlying crimes at issue here. The version of Kentucky Revised Statute (KRS) 532.030(1) in effect at that time provided only three potential sentences for a capital offense:  a term of twenty years'

imprisonment or more, life imprisonment, or death. Stanford's jury instructions reflected all three options. For the reasons previously discussed, a death sentence has been held to be unconstitutional in juvenile offender cases like the present. The more precise question now before this Court is whether Stanford's LWOP sentence resulting from a commutation is unlawful considering that it was not a permissible statutory option at the time he committed the underlying crimes in 1981.

The plain language of Section 77 of our Kentucky Constitution empowers the Governor exclusively to grant pardons and commutations and specifically provides as follows:

> He shall have power to remit fines and forfeitures, commute sentences, grant reprieves and pardons, except in case of impeachment, and he shall file with each application therefor a statement of the reasons for his decision thereon, which application and statement shall always be open to public inspection. In cases of treason, he shall have power to grant reprieves until the end of the next session of the General Assembly, in which the power of pardoning shall be vested; but he shall have no power to remit the fees of the Clerk, Sheriff or Commonwealth's Attorney in penal or criminal cases.

In applying this provision, our own Supreme Court has held "[t]he decision to grant clemency is left to the Governor's unfettered discretion." *Wilson v. Commonwealth*, 381 S.W.3d 180, 194 (Ky. 2012). *See also Hamilton v. Commonwealth*, 514 S.W.2d 188, 189 (Ky. 1974) (observing that "the Governor had authority to commute the death sentence to any lesser penalty [and that] [t]he

decisions of the Federal courts adopted the same reasoning.").  We are also well aware of the separation of powers constraints under Sections 27 and 28 of the Kentucky Constitution, which restrain courts from interfering with a governor's discretion under Section 77.  And as previously cited, there is nothing contained in the plain language of Section 77 that limits a governor's authority to commute a sentence to only a statutorily authorized sentence in existence at the time of the underlying offense.[5]  Furthermore, Stanford has failed to cite any other clear or binding authority to the contrary.  Rather, Stanford relies primarily on *Alford v. Hines*, 189 Ky. 203, 224 S.W. 752, 753 (1920) (holding that "[t]he Governor had power to commute the sentence or to pardon Alford altogether, but he had and has no power to change the statutes[.]").  However, the Court's decision in *Alford* was confined to the context of parole eligibility which, the Court concluded, "is not made to depend upon the time to which his sentence may be commuted, but entirely and wholly upon the term of imprisonment provided by law for the crime for which he was committed[.]" *Id.*  We will not belabor the facts or reasoning employed in *Alford*.  It is factually distinguishable from the present case, contains no direct analysis of Section 77, is over one hundred years old, and has not been cited by a single appellate court since its publication.  Even a charitable reading of

---

[5] We also note that at the time of Stanford's 2003 commutation, LWOP was a lawful sentence under KRS 532.030.

*Alford* favoring Stanford's argument is insufficient to overcome the broad

authority afforded to a governor under Section 77 of the Kentucky Constitution

and the robust separation of powers provisions under Sections 27 and 28. We

believe that *Hamilton* remains controlling. *Hamilton* was summarized in *Stanford*

*V* as follows:

> [A]fter the Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), three defendants who had had their death sentences previously commuted to life without the benefit of parole sought to have their sentences "corrected" to delete the condition of ineligibility for parole. Their theory, similar to Stanford's, was that since *Furman* made the original death penalty retroactively invalid, they were entitled to the next highest sentence authorized by law, life imprisonment, which included the possibility of parole. The Court of Appeals, then Kentucky's highest court, rejected this argument, noting "[t]he simple fact . . . that at the time *Furman* was decided, the three appellants here were not under death sentences. Those sentences had been voided by commutations. *Furman* cannot reasonably be considered to have a retrospective application to nonexistent death sentences." 514 S.W.2d at 190.
>
> Similarly, at the time *Roper* was decided, Stanford was no longer under a death sentence, as his original sentence had been voided by commutation nearly fifteen months earlier. *Roper* therefore does not have retroactive application to Stanford's situation. While Stanford maintains that *Hamilton* was wrongly decided, in our view it still controls and we are therefore bound to follow it. SCR [Kentucky Supreme Court Rule] 1.030(8)(a).
>
>  . . .

> [A]ny argument that Stanford now objects to the
> commutation appears to be disingenuous at best, as his
> own pleadings reflect that Stanford specifically sought
> and applied for the commutation.

*Stanford V*, 248 S.W.3d at 580-81.  In that same vein, the Kentucky Supreme Court has also held, albeit in the context of a case involving a guilty plea, that "upon the unqualified consent of the defendant, a sentence of life without parole may be lawfully imposed for capital crimes committed before July 15, 1998." *Commonwealth. v. Phon*, 17 S.W.3d 106, 108 (Ky. 2000), *as corrected* (Apr. 20, 2000).  Like *Commonwealth v. Phon*, it logically follows that there is nothing barring a criminal defendant or inmate from consenting to a lesser sentence arising from a commutation.  Lastly, and by way of analogy, the United States Supreme Court has held, *inter alia*, that "the conclusion is inescapable that the pardoning power was intended to include the power to commute sentences on conditions which do not in themselves offend the Constitution, but which are not specifically provided for by statute." *Schick v. Reed*, 419 U.S. 256, 264, 95 S. Ct. 379, 384, 42 L. Ed. 2d. 430 (1974).  Therefore, having considered the aforementioned arguments and authority, we reject Stanford's argument that Section 77 of the Kentucky Constitution does not authorize the Governor to impose a sentence greater than the maximum sentence authorized by the legislature at the time of the underlying offense.

## 2. Stanford's Eighth Amendment rights were not violated.

As previously stated, we are well aware of the separation of powers constraints under Sections 27 and 28 of the Kentucky Constitution, which restrain courts from interfering with a governor's discretion under Section 77. Despite these considerations and the preceding analysis, a governor's clemency power is not absolute or, more precisely, while a governor's authority to grant a commutation is plenary, the new sentence imposed may be subject to judicial review if it violates specific constitutional protections. For example, the United States Supreme Court has observed that "[c]ourts may not alter a President's commutation, except perhaps if the commutation itself violates the Constitution." *Dennis v. Terris*, 927 F.3d 955, 959 (6th Cir. 2019) (citing *Schick*, 419 U.S. at 264, 95 S. Ct. at 384). *See also Foley v. Beshear*, 462 S.W.3d 389 (Ky. 2015) (subjecting the Governor's authority under Section 77 to a due process analysis pursuant to the federal Constitution).

We see no reason why the logic embraced in *Schick* and *Foley* would preclude subjecting the present case to judicial review pursuant to the Eighth Amendment. The point is that the sentences imposed under Section 77 of the Kentucky Constitution are not impervious to judicial oversight when a specific case implicates constitutional safeguards, which may arise by judicial decisions retroactively applied years after the crime and sentencing occurred, as is the case

-10-

here. This is not to conclude that every clemency order is subject to constitutional review as a matter of right. To the contrary, we cannot overly stress the unique circumstances presented here. To be clear, the distinction between Stanford's first argument and the present is that Stanford's present argument arises under the Eighth Amendment and its accompanying directives from our nation's highest Court. Thus, Stanford's argument at the very least invokes the Supremacy Clause[6] of our federal Constitution, whereas his previous argument was confined to the relevant sections of the Kentucky Constitution as discussed. In other words, there was no federal issue raised with his first claim in this appeal.

As to his Eighth Amendment argument, however, it is nevertheless unclear whether *Miller*, *Montgomery*, or *Jones* apply in this specific context where a LWOP sentence has been issued as a result of a commutation, as opposed to a final judgment issued by a trial court. Counsel has cited no authority on the matter and this Court has not discovered any clear directive. It is noteworthy that the Commonwealth does not contest that *Miller* and *Montgomery* apply here.[7] In fact, the Commonwealth devotes much of its brief to discussing and applying those cases in concluding that their respective standards have been satisfied. Given the

---

[6] U.S. CONST. art. VI.

[7] As previously stated, the United States Supreme Court's most recent decision in *Jones* was decided while the present case was pending on appeal.

absence of a clear directive and the unique facts of this case, we believe an Eighth Amendment analysis is appropriate.[8]

However, a gubernatorial commutation and its accompanying record is an inadequate substitution for the trial record for purposes of an analysis pursuant to the most recent United States Supreme Court case law which involved either the imposition of LWOP sentences resulting from a jury verdict or the imposition of a mandatory LWOP by the trial court.[9] And although this Court has previously concluded that Stanford's "original sentence had been voided by commutation[,]" we have not been instructed that the sentencing proceeding or the sentencing record has been voided. *Stanford V*, 248 S.W.3d at 581. Therefore, due to the extremely novel nature of this issue and out of an abundance of caution, we will review the relevant portions of the trial record and determine whether the dictates of *Miller*, *Montgomery*, and *Jones* have been satisfied.

In *Phon v. Commonwealth*, the Kentucky Supreme Court applied the holdings and *Miller* and *Montgomery*. 545 S.W.3d 284, 293 (Ky. 2018).[10] And

---

[8] We also note that the Eighth Amendment is intended to protect the rights of the criminally accused and convicted. Therefore, any ambiguity as to whether *Miller*, *Montgomery*, and *Jones* are even applicable in the present case should be resolved in the affirmative.

[9] An affidavit signed by Governor Patton has been filed in this case where he states that the *only* factor he considered in granting Stanford's commutation was his age, not any other attendant factors articulated in *Miller* or *Montgomery*.

[10] For the sake of clarity, *Phon v. Commonwealth*, like the present case, involved a post-conviction request for relief pursuant to RCr 11.42 and CR 60.02 and, although involving the

although the *Phon* Court did not have the benefit of *Jones* at the time, the analysis embraced in *Phon* generally comports with *Jones*.  *Id.* at 293-98.  For example, *Phon* specifically observed that "[t]he [United States Supreme] Court did not outlaw LWOP as a possible sentence for juveniles but deemed that a *mandatory* sentence of LWOP without attention to any of the attendant circumstances of youth violates the requirement of proportionality under the Constitution."  *Id.* at 293.  Therefore, *Phon* continues to provide a useful resource.

Although the Court ultimately reversed Phon's sentence and remanded for a new sentencing hearing for other reasons, the Court concluded that:

> Phon had an extensive sentencing hearing.  He presented multiple witnesses to present a case of mitigation.  His attorneys expressed the limits of his judgment due to his younger age.  His family members explained his harsh upbringing.  All of these factors were presented to the jury.  That jury had an opportunity to consider his age and his "youthful" characteristics.  The Constitution guarantees an opportunity for the sentencer to *consider* these characteristics; it does *not* require that the sentencer accept those characteristics as worthy of mitigating an LWOP sentence.  As such, Phon's sentencing did not violate the Eighth Amendment of the federal Constitution[.]

*Id.* at 293-294.

---

same parties, is separate and distinct from the previously cited case of *Commonwealth v. Phon*, 17 S.W.3d 106, 108 (Ky. 2000), *as corrected* (Apr. 20, 2000).

As in *Phon*, Stanford presented the testimony of several witnesses during the capital sentencing phase of trial, including his former stepfather, his aunt, and a juvenile counselor who specifically agreed that she believed Stanford could be rehabilitated. A Louisville Urban League instructor also testified that Stanford was "capable of being treated." The former director of the Juvenile Employment Skills Project for the Louisville Urban League, who had contact with Stanford while he was enrolled in that program, also specifically testified that there was a "65 to 70% chance that Mr. Stanford could, in fact, be rehabilitated based on [his] experiences." However, that witness concluded that rehabilitation could not take place in the adult penal system and that alternative programs would be necessary. In addition, the jury instructions included an extensive list of twenty mitigating circumstances including:

> (a) That at the time of the offense Kevin Stanford was of a very youthful age in light of the fact that he was only 17 years old.
>
> (b) That at the time of the offense the capacity of Kevin Stanford to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, even though the impairment of the capacity of Kevin Stanford to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was insufficient to constitute a defense to the crime.
>
> . . .
>
> (g) That Kevin Stanford is emotionally immature.

-14-

(h) That Kevin Stanford is not a leader but is a follower of other people's actions.

(i) That Kevin Stanford was capable of being rehabilitated.

Therefore, the jury was allowed to consider mitigating evidence similar to that articulated in *Phon*. Also like in *Phon*, it is reasonable to conclude that the facts surrounding Stanford's offenses are indicative of the "rare juvenile offender whose crime reflects irreparable corruption[.]" 545 S.W.3d at 292 (citations omitted). The Sixth Circuit Court of Appeals' recitation of the facts underlying the crimes committed by Stanford and his accomplices proves particularly instructive, and therefore, it is necessary to quote that decision at length:

> In 1981, [the victim,] Baerbel Poore worked as an attendant at a Checker gasoline station in southwestern Jefferson County, Kentucky. Working alone one evening, she read the gas pumps in preparation for closing the station for the night. Stanford, then seventeen years old, lived in the vicinity of the Checker station and knew Poore. On January 7, 1981, he and David Buchanan decided to rob the station. Troy Johnson, their accomplice, agreed to drive the get-away car but refused to participate in the robbery.
>
> As Poore finished reading the pumps, Stanford approached her with a gun and, together with Buchanan, forced Poore inside the station's convenience store. Once inside, Buchanan attempted to open the store's floor safes while Stanford took Poore to a restroom and raped her. Buchanan soon joined Stanford in the restroom, where they continued to rape and sodomize Poore.

-15-

> When Stanford left the station, he took Poore with him. Driving Poore's car, he drove her a short distance to an isolated area. Buchanan and Johnson followed in Johnson's car. When the cars stopped, Buchanan exited Johnson's car and approached Poore's. He saw Stanford standing just outside the open driver's door and Poore smoking a cigarette in the back seat. Suddenly, Stanford shot Poore in the face at point blank range. He then shot her a second time in the head.

*Stanford IV*, 266 F.3d at 449.

At the final sentencing hearing, five additional witnesses testified on Stanford's behalf, including his mother. And although unnecessary under *Jones*, future Kentucky Supreme Court Justice and then presiding circuit Judge Charles M. Leibson acknowledged that while "a great deal of evidence was presented at the jury trial on the subject of mitigation[,]" there were "severe aggravating circumstances[,]" and that the victim was "subject to physical abuse and personal humiliation and terror, far worse than in any murder case in [the court's] previous experience." The court ultimately concluded that Stanford was beyond rehabilitation. In sum, based on the record in this case and the relevant precedent, the trial court did not abuse its discretion in denying Stanford's post-conviction motions. We further conclude that Stanford's Eighth Amendment rights were not violated.

Lastly, we reach this result very much aware of the very unique circumstances of this case, including the fact the United States Supreme Court

-16-

initially affirmed Stanford's death penalty before it reversed that precedent in *Roper*. Had Stanford not been commuted prior to *Roper*, he would have been entitled to be resentenced to a term of twenty years' imprisonment or more, or life imprisonment, because neither death nor LWOP would have been permissible options under the 1981 version of KRS 532.030(1).

Our own General Assembly has since determined that LWOP is an inappropriate sentence for youthful offenders. *See Phon*, 545 S.W.3d at 295 (citing *Shepherd v. Commonwealth*, 251 S.W.3d 309 (Ky. 2008)). It appears that Stanford is the last person remaining in the Commonwealth who is serving a LWOP sentence for crimes committed as a juvenile. *Id*. at 294. Furthermore, we reiterate that applying *Miller*, *Montgomery*, and *Jones* in the context of a commutation is a novel question and we are unaware of any binding precedent on the matter. Nevertheless, absent further guidance concerning our Commonwealth's separation of powers or society's "evolving standards of decency[,]" we cannot say that the trial court abused its discretion or that Stanford's Eighth Amendment rights were violated. *Id*. at 291 (internal quotation marks and citations omitted).

## IV.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the Jefferson Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:          BRIEF FOR APPELLEE:

Timothy G. Arnold             Daniel Cameron
Frankfort, Kentucky           Attorney General of Kentucky

                              Jason B. Moore
                              Special Assistant Attorney General
                              Frankfort, Kentucky